**F I L E D**

PUBLISH

**February 23, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HARVEY FRANK ROBBINS,

Plaintiff - Appellant,

v.

UNITED STATES BUREAU OF LAND
MANAGEMENT, an agency of the
United States Department of the Interior;
GALE A. NORTON, Secretary of the
Interior; KATHLEEN CLARKE, Director
of the United States Bureau of Land
Management; EDWARD SHEPARD,
Assistant Director, Renewable Resources
and Planning, United States Bureau of
Land Management; and ROBERT
BENNETT, Wyoming State Director,
Bureau of Land Management,

Defendants - Appellees.

No. 05-8087

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. NO. 04-CV-41-J)**

---

Marc Ryan Stimpert (Karen Budd-Falen and Erin Sass-Eastman on the briefs),
Budd-Falen Law Offices, LLC, Cheyenne, Wyoming, for Plaintiff - Appellant.

Robert J. Lundman, United States Department of Justice, Environment & Natural
Resources Division, Washington, D.C. (Matthew J. McKeown, Deputy Assistant
Attorney General, Washington, D.C.; Todd S. Aagaard, United States Department
of Justice, Environment & Natural Resources Division, Washington, D.C.; and

Kristina Clark, Of Counsel, Office of the Solicitor, Department of the Interior, Washington, D.C.; with him on the brief), for Defendants - Appellees.

---

Before **TACHA**, Chief Circuit Judge, **ANDERSON** and **HARTZ**,[*] Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Plaintiff Harvey Frank Robbins brought this suit challenging the termination by the Bureau of Land Management ("BLM") of a Settlement Agreement that, if it had remained in effect for two years, would have required the BLM to dismiss sixteen pending administrative actions against Robbins. The district court upheld the BLM's action. Robbins appeals, arguing, as he did below, that, in voiding the Settlement Agreement, the BLM violated his Fifth Amendment procedural due process rights. The BLM responds that Robbins' claim is barred by sovereign immunity based on the relationship between the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and the Tucker Act, 28 U.S.C. § 1491. For the reasons set forth below, we reject the BLM's sovereign

---

[*]Judge Hartz joins in the result and concurs in the opinion except for Part II.

-2-

immunity argument but affirm the district court's denial of Robbins' due process claim.

## BACKGROUND

Robbins is the owner of three ranch properties located in Hot Springs County, Wyoming. These three ranches include areas of private land interspersed with public land administered by the BLM. Robbins has held grazing permits, issued by the BLM, which authorize cattle grazing on some of this public land. Between 1997 and 2003, the BLM took sixteen separate administrative actions against Robbins, ten of which alleged that Robbins had engaged in "trespass" by allowing his cattle to graze on public lands for which he did not hold a permit. Robbins appealed these sixteen actions to the BLM Office of Hearings and Appeals or the Department of Interior Board of Land Appeals.

On January 15, 2003, while all sixteen administrative appeals remained pending, Robbins and the BLM executed a Settlement Agreement for the purpose of "improv[ing] the working relationship between" Robbins and the BLM such that they would handle any future disputes with each other "in good faith and in a spirit of mutual cooperation." Settlement Agreement ("SA") at 1-2, Appellant's App. at 66-67. The Agreement provided that the parties would jointly request stays of the sixteen appeals and would subsequently jointly move to dismiss the

appeals with prejudice provided that "a period of 24 consecutive months transpires after the Effective Date of th[e] Agreement without BLM having initiated a formal administrative or judicial proceeding against Robbins alleging willful trespass, the violation of any regulation, law, or BLM decision where range or resource degradation is at issue." SA at 8, id. at 73. It further provided that Robbins and the BLM would engage in an informal dispute resolution ("IDR") process to attempt to resolve any future disputes before pursuing any legal or administrative remedies but that the BLM "may at any time take action necessary to enforce its regulations or protect public land resources, including a decision that requires Robbins to take action that is the subject of" a dispute between Robbins and the BLM. SA at 6, id. at 71. Among other things, the Agreement also contained the following provision:

> The Parties stipulate and agree that, as soon as practical after the Effective Date of this Agreement, BLM shall conditionally transfer to Robbins the Owl Creek grazing permit. Before the BLM conditionally transfers this grazing permit to Robbins, Robbins shall first submit to the BLM an appropriate and acceptable grazing or pasture plan detailing Robbins' contemplated uses under this conditional grazing permit. However, if at any time during the 24 months following the conditional transfer of this permit, and after first complying with the [IDR] requirement set forth in Paragraph 3, BLM initiates a formal administrative or judicial proceeding against Robbins alleging willful trespass or the violation of any regulation, law, or BLM decision where range or resource degradation is at issue (regardless of whether such a proceeding directly involves the Owl Creek permit or any other disputed matter between Robbins and the BLM), then without the need for any further consultation, action, or legal recourse, the BLM may cancel the Owl Creek permit . . . . In

-4-

this event, Robbins shall be free to file an appropriate pleading with the Federal District Court to pursue his legal remedies in the respect to the Owl Creek permit.

SA at 9-10, id. at 74-75. However, following this twenty-four month period, provided that no IDR proceedings have been concluded adversely to Robbins, and provided that Robbins is "otherwise qualified under the then existing law, regulations, and land use plan," Robbins "may apply" for the Owl Creek permit, and the BLM "shall issue the permit to Robbins" free of the conditions previously imposed. SA at 10, id. at 75.

In addition, the Agreement provided that, if the BLM initiated a formal proceeding against Robbins that alleged a "willful trespass or the violation of any regulation, law, or BLM decision where range or resource degradation is at issue" within twenty-four months of the effective date of the Agreement, the BLM, "without the need for any further consultation, action, or legal recourse," may, "in BLM's sole discretion" declare the stays on the administrative appeals to be "of no further force or legal effect." SA at 8, id. at 73. In that event, the Agreement itself would become void.

Beginning in May 2003, four months after the Agreement was executed, the BLM on a number of occasions observed unauthorized grazing by Robbins' cattle on allotments for which Robbins held no permit. The BLM issued one trespass notice to Robbins on December 19, 2003, relating to cattle found in three

allotments on December 15 and 16, and a second notice on December 23, 2003,

relating to cattle found in two allotments on December 19. The notices indicated

that Robbins had allowed unauthorized grazing by his cattle in violation of 43

C.F.R. § 4140.1(b)(1)(iii).[1] Robbins protested the two notices on December 29,

2003, and met with BLM local field office officials on January 12, 2004. At that

meeting, Robbins criticized the BLM's practice of issuing notices of trespass for

nonwillful violations because, in his view, it was unreasonable to expect cattle to

stay on their designated allotments all the time. The BLM officials explained that

they based the decision of whether to issue a notice of trespass on the

circumstances of each case, and in Robbins' case there had been a number of

previous incidents in the past year involving escaped cattle where no notice of

trespass had been issued. Robbins expressed his concern that having trespasses

on his record jeopardized his ability to keep or renew his grazing permits. Citing

this concern, Robbins refused to agree to a settlement under 43 C.F.R. § 4150.3,

which would have required designating the noticed trespasses as nonwillful,

---

[1]That provision prohibits "[a]llowing livestock . . . to graze on [public lands] . . . [i]n an area or at a time different from that authorized" by a grazing permit. 43 C.F.R. § 4140.1(b)(1)(iii).

willful, or repeated willful.[2]  In accord with the IDR provision of the Settlement Agreement, the parties therefore sought review by the BLM Director's Office.

As part of that review, Robbins met with the BLM Deputy State Director on January 21, 2004.  The Deputy State Director then issued a written decision indicating that Robbins continued to refuse to settle the noticed trespasses and directing the field office to issue a proposed decision in accordance with 43 C.F.R. § 4160.1.  Accordingly, on January 28, 2004, the field office issued a Notice of Proposed Decision indicating that the previously-alleged trespasses constituted nonwillful violations of 43 C.F.R. § 4140.1(b)(1)(iii) and assessing a $150 charge against Robbins to cover the amount of unauthorized forage that the trespassing cattle were calculated to have consumed, based on the number of cattle and number of days they were in trespass.  In accord with 43 C.F.R. Subpart 4160, governing BLM administrative actions, the Notice of Proposed Decision explained that the proposed decision would become the final decision unless it was protested within fifteen days and that Robbins could appeal the final decision within thirty days of its receipt.  See 43 C.F.R. §§ 4160.1-4160.4.

---

[2]This provision sets forth the options of BLM officers in settling an unauthorized grazing violation by either assessing a monetary fee or agreeing to a nonmonetary settlement, depending on whether the violation is determined to be nonwillful, willful, or repeated willful.  See 43 C.F.R. § 4150.3.

Two days later, on January 30, 2004, the BLM sent a letter to Robbins "to confirm that the Settlement Agreement of January 15, 2003, between [Robbins] and the [BLM] is now void and of no further effect" because the Agreement's voiding provision "was triggered by the formal administrative proceeding initiated on January 28, 2004." Appellant's App. at 226. The letter further indicated that, "[a]t this time, the BLM is considering its options regarding the [sixteen stayed administrative] proceedings listed in" the Agreement. Id.

Robbins then brought suit in federal district court, challenging, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Fifth Amendment's Due Process Clause, the BLM's voiding of the Settlement Agreement. Specifically, Robbins alleged that he had a protected property interest in the Settlement Agreement and that the BLM violated his procedural due process rights by declaring the Agreement void without having alleged that Robbins' trespasses implicated "range or resource degradation." The relief requested by Robbins involved, essentially, a declaration of Robbins' rights under the Agreement and an injunction prohibiting the BLM from violating the Agreement. The BLM filed a motion to dismiss, arguing that Robbins' suit was barred by sovereign immunity. The district court denied the BLM's motion to dismiss but ultimately ruled in favor of the BLM on Robbins' constitutional

claim. Robbins appealed, raising the same arguments before this court. The BLM, in turn, renews its claim of sovereign immunity.[3]

**DISCUSSION**

## I. SOVEREIGN IMMUNITY

The BLM's sovereign immunity defense "is jurisdictional in nature." Wyoming v. United States, 279 F.3d 1214, 1225 (10th Cir. 2002). By depriving courts of subject matter jurisdiction over claims against the United States, its agencies, and officers acting in their official capacity, "[s]overeign immunity generally shields [these entities] from suit." Id.; see also United States v. Sherwood, 312 U.S. 584, 586 (1941) ("[T]he terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.").

Here, Robbins asserts sovereign immunity is waived pursuant to the APA, which provides that, in most circumstances, "[a]n action in a court of the United States seeking relief other than money damages . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States." 5

---

[3]The parties agreed to an expedited briefing and oral argument schedule. In addition, Robbins filed an emergency motion for stay of the district court's order so that the administrative appeals would not be allowed to proceed while this appeal remained pending. This court denied that motion but allowed Robbins to renew his motion for a stay at oral argument. Robbins did so. Because we rule in favor of the BLM on the merits, we deny Robbins' renewed motion for a stay.

U.S.C. § 702. We have recognized that this language "waive[s] sovereign immunity in most suits for nonmonetary relief" against the United States, its agencies, and its officers.[4] Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1233 (10th Cir. 2005). However, this waiver does not apply where "'any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" Neighbors for Rational Dev., Inc. v. Norton, 379 F.3d 956, 961 (10th Cir. 2004) (quoting 5 U.S.C. § 702(2)). Thus, we must read the APA "'in conjunction with other jurisdictional statutes waiving sovereign immunity'" in order to determine whether those statutes forbid the relief sought in the case at hand. City of Albuquerque, 379 F.3d at 907 (quoting New Mexico v. Regan, 745 F.2d 1318, 1321-22 (10th Cir. 1984)).

Neither party here disputes that the Settlement Agreement is equivalent to a contract in this context, and we therefore assume that to be the case.[5] Accordingly, there are two other federal statutes that are potentially implicated

---

[4]Even in cases where the APA effectively waives sovereign immunity, the APA does not itself confer subject matter jurisdiction. City of Albuquerque v. U.S. Dep't of Interior, 379 F.3d 901, 906 (10th Cir. 2004). Rather, the source of jurisdiction must be found elsewhere, such as in the general federal question statute, 28 U.S.C. § 1331 (granting federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States"). See City of Albuquerque, 379 F.3d at 906-07.

[5]We note that a panel of this court, in an unpublished opinion, has raised a question regarding this assumption. Sommer v. Fed. Aviation Admin., No. 92-1287, 1994 WL 161345, at **2-3 (10th Cir. May 2, 1994) (unpublished).

here. The Tucker Act, 28 U.S.C. § 1491, provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." Id. § 1491(a)(1). The Little Tucker Act,[6] 28 U.S.C. § 1346(a)(2), grants federal district courts concurrent jurisdiction over contract claims against the government where plaintiffs seek no more than $10,000 in damages. The Supreme Court has long held that neither the Tucker Act nor the Little Tucker Act authorize relief other than money damages for such contract claims. United States v. Jones, 131 U.S. 1, 19 (1889); see Lee, 420 U.S. at 140. Indeed, in Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949), the Supreme Court suggested that injunctive remedies against the government were generally quite limited. See United States v. Murdock Mach. & Eng'g Co. of Utah, 81 F.3d 922, 930 (10th Cir. 1996) (construing Larson).

As we have previously recognized, however, the 1976 amendments to the APA to a large extent superseded the restrictions on injunctive relief set forth in Larson by inserting into 5 U.S.C. § 702 the language quoted above, waiving

---

[6]We recognize that some judicial opinions do not refer to the Little Tucker Act as distinct from the Tucker Act. See, e.g., Lee v. Thornton, 420 U.S. 139, 140 (1975); Amalgamated Sugar Co. v. Bergland, 664 F.2d 818, 823 (10th Cir. 1981). However, for purposes of clarity, we refer here to the Little Tucker Act by its separate common name. See Dahn v. United States, 127 F.3d 1249, 1254 (10th Cir. 1997); see also Sharp v. Weinberger, 798 F.2d 1521, 1522 (D.C. Cir. 1986).

sovereign immunity for suits seeking "relief other than money damages." Simmat, 413 F.3d at 1233; Murdock Mach. & Eng'g Co., 81 F.3d at 930 n.8; see also Bowen v. Massachusetts, 487 U.S. 879, 891-92 (1988) ("[I]t is undisputed that the 1976 amendment to § 702 was intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cases covered by the amendment."); Clark v. Library of Congress, 750 F.2d 89, 102 (D.C. Cir. 1984) ("[T]he 1976 amendments to § 702 of the Administrative Procedure Act eliminated the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity." (citation omitted)); Sea-Land Serv., Inc. v. Brown, 600 F.2d 429, 432 (3d Cir. 1979) (recognizing that the 1976 amendments "in effect repealed the Larson holding" except in cases where the "expressly or impliedly forbids" language of § 702 applies).

The question is thus whether Congress intended the 1976 APA amendments to supersede the restrictions on injunctive and declaratory relief for contract claims that the Supreme Court had previously recognized pursuant to the Tucker and Little Tucker Acts, or whether, alternatively, those statutes "impliedly forbid[]" such relief.[7]  A number of other circuit courts have adopted the latter

_____

[7]The BLM limits its discussion of this issue to the Tucker Act's vesting of jurisdiction over contract claims in the Court of Federal Claims, without reference

(continued...)

-12-

interpretation, thus holding that the APA does not waive sovereign immunity for claims that arise out of a contract and that seek specific performance of the contract as relief. See Up State Fed. Credit Union v. Walker, 198 F.3d 372, 375 (2d Cir. 1999); Tucson Airport Auth. v. Gen. Dynamics Corp., 136 F.3d 641, 646 (9th Cir. 1998); Transohio Sav. Bank, 967 F.2d at 610; Coggeshall Dev. Corp. v. Diamond, 884 F.2d 1, 3 (1st Cir. 1989); Sea-Land Serv., Inc., 600 F.2d at 432-33; see also Bowen, 487 U.S. at 921 (Scalia, J., dissenting) ("It is settled that sovereign immunity bars a suit against the United States for specific performance of a contract, and that this bar was not disturbed by the 1976 amendment to § 702." (citation omitted)) (citing Larson and opinions of the circuits listed above).

It is not immediately clear whether this circuit is in accord with this view. Indeed, in Hamilton Stores, Inc. v. Hodel, 925 F.2d 1272 (10th Cir. 1991), we

---

[7](...continued)
to district courts' concurrent jurisdiction over such claims up to $10,000 under the Little Tucker Act. It quotes the D.C. Circuit Court's statement, in Transohio Sav. Bank v. Dir., Office of Thrift Supervision, 967 F.2d 598, 609 (D.C. Cir. 1992), that "the Tucker Act impliedly forbids—in APA terms—not only district court awards of money damages, which the Claims Court may grant, but also injunctive relief, which the Claims Court may not." Appellees' Br. at 23. While the BLM appears to construe this statement to mean that federal district courts can never award money damages in contract claims against the government, and that all such contract claims must be brought in the Court of Federal Claims, such a construction is clearly incorrect, as district courts may award up to $10,000 in contract damages under the Little Tucker Act, as discussed above. See Sharp, 798 F.2d at 1523.

explicitly held that a determination that a particular action "is not an action for money damages resolves [in the plaintiff's favor] the issue of the waiver of sovereign immunity raised by the government." Id. at 1278 n.12. The plaintiff in Hamilton Stores sought injunctive and declaratory relief for an alleged breach of contract, as well as alleged violations of statutory and regulatory provisions, by Department of Interior and National Park Service officials.

While this suggests that we have already held that a plaintiff may seek nonmonetary relief in district court based on the government's breach of contract, it must be noted that the government's only argument in Hamilton Stores in support of its claim that "the APA waiver of sovereign immunity does not apply" was that the plaintiff's claim was "essentially a disguised action for damages." Id. at 1276 (citation omitted). We determined that that was not so and thus rejected the government's sovereign immunity defense. Id. at 1278. Thus, we did not then consider the argument raised by the BLM here, regarding the "impliedly forbids" exception to the § 702 waiver. While we also stated in Hamilton Stores that "the Tucker Act does not preclude [a] claimant from seeking nonmonetary relief in a district court," id. at 1277 n.11, that general statement did not address contract claims in particular. Subsequent to our decision in Hamilton Stores, we suggested in dicta that the § 702 waiver does not apply to contract claims. Se.

-14-

Kan. Cmty. Action Program, Inc. v. Sec'y of Ag., 967 F.2d 1452, 1456 n.5 (10th Cir. 1992).

We now join our fellow circuits in holding that the Tucker and Little Tucker Acts "impliedly forbid" federal courts from ordering declaratory or injunctive relief, at least in the form of specific performance,[8] for contract claims against the government, and that the APA thus does not waive sovereign immunity for such claims. We find these circuits' reasoning persuasive, particularly in light of the discussion in the House Report on the 1976 APA amendments, which specifically addressed their intended impact on contract claims:

> [In the Tucker Act,] Congress created a damage remedy for contract claims with jurisdiction limited to the Court of Claims except in suits for less than $10,000. The measure is intended to foreclose specific performance of government contracts. . . . [T]he Tucker Act[] "impliedly forbids" relief [for contract claims] other than the remedy provided by the Act. Thus, the partial abolition of sovereign immunity brought about by this bill does not change existing

---

[8]In pre-Up State cases, the Second Circuit distinguished between specific performance and other forms of nonmonetary relief for contract claims. See Ensign Fin. Corp. v. Fed. Deposit Ins. Corp., 785 F. Supp. 391 (S.D.N.Y. 1992) (discussing Second Circuit cases). In Up State, the Second Circuit folded this distinction into its analysis, following Megapulse, Inc. v. Lewis, 672 F.2d 959 (D.C. Cir. 1982), of whether a claim should be characterized as a contract action at all. See Up State Fed. Credit Union, 198 F.3d at 376 (suggesting that a suit that sought neither damages nor specific performance would not meet the "nature of the proposed remedy" prong of the Megapulse test for identifying contract actions).

limitations on specific relief, if any, derived from statutes dealing with such matters as government contracts . . . .

H.R. Rep. No. 94-1656, at 12-13 (1976), as reprinted in 1976 U.S.C.C.A.N. 6121, 6133; see Sea-Land Serv., Inc., 600 F.2d at 433. Moreover, the same public policy concerns that led the Supreme Court to recognize this limitation on relief for contract claims continues to apply. See Larson, 337 U.S. at 704 ("The Government . . . cannot be stopped in its tracks by any plaintiff who presents a disputed . . . contract right. . . . [I]n the absence of a claim of constitutional limitation, the necessity of permitting the Government to carry out its functions unhampered by direct judicial intervention outweighs the possible disadvantage to the citizen in being relegated to the recovery of money damages after the event.").[9]

This conclusion does not end our analysis, however. Robbins argues that, even if the APA waiver does not apply to contract claims, it still applies to his

---

[9]It must be recognized that the plain language of the Tucker and Little Tucker Acts does not distinguish between claims founded on contracts and those founded on the Constitution, statutes, or regulations. However, our analysis in regard to the relation between these Acts and the "impliedly forbids" exception to the APA waiver of sovereign immunity is, like those of other circuits, limited to contract claims. See Richard H. Seamon, Separation of Powers and the Separate Treatment of Contract Claims Against the Federal Government for Specific Performance, 43 Vill. L. Rev. 155, 191-97 (1998) (explaining that, "although the text of the Tucker Act does not accord contract claims special treatment, the legal landscape in which it was enacted had already established such special treatment").

claim that the BLM's voiding of the Settlement Agreement violated his Fifth Amendment procedural due process rights because that is a constitutional, rather than a contractual, issue. According to the BLM, however, Robbins' "due process claim rests entirely on BLM's alleged breach of the settlement agreement" and is therefore essentially "founded on a contract." Appellee's Br. at 25.

Those circuits that have considered the question of whether a claim qualifies as a contract claim in this context have adopted the approach set forth in Megapulse, Inc. v. Lewis, 672 F.2d 959 (D.C. Cir. 1982): "The classification of a particular action as one which is or is not 'at its essence' a contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." Id. at 968; see Up State Fed. Credit Union, 198 F.3d at 376; Tucson Airport Auth., 136 F.3d at 647. Despite their use of the same analytical framework, however, the D.C. and Ninth Circuits have reached differing conclusions when presented with the situation now before us, where the plaintiff claims a Fifth Amendment due process violation based on a contract with the government in which the plaintiff claims a protected property interest. The D.C. Circuit allowed the due process claim, holding that "litigants may bring statutory and constitutional claims in federal district court even when the claims depend on the existence and terms of a contract with the government," and "even where the relief sought is . . . specific performance" of the contract.

Transohio Sav. Bank, 967 F.2d at 610. In effect, the court considered the "source of rights" for a due process claim to be the Constitution rather than the contract. Cf. Albrecht v. Comm. on Employee Benefits, 357 F.3d 62, 69 (D.C. Cir. 2004) (reaffirming Transohio analysis but concluding the APA waiver did not apply to plaintiff's breach of fiduciary duty claim because that claim "turn[ed] entirely on the terms of a contract" and no constitutional violations were asserted). In contrast, the Ninth Circuit denied the due process claim because it was "in the first instance dependent on the contract" and thus "contractually-based." Tucson Airport Auth., 136 F.3d at 647 (citing North Star Alaska v. United States, 14 F.3d 36, 37 (9th Cir. 1994)).

In our view, the D.C. Circuit has adopted the better reasoned approach. As the court stated in Transohio,

> to accept the [contrary] position we would have to find that, in enacting the APA and the Tucker Act, Congress intended to preclude any review at all of constitutional claims seeking equitable relief, where the constitutional claims stem from contracts. But where constitutional rights are at stake the courts are properly astute, in construing statutes, to avoid the conclusion that Congress intended to use the privilege of immunity . . . in order to defeat them.

Transohio Sav. Bank, 967 F.2d at 611 (internal quotation omitted). It is true that not every contract with the government will provide a basis for a constitutional claim. See, e.g., Martz v. Inc. Vill. of Valley Stream, 22 F.3d 26, 30 (2d Cir. 1994) (suggesting that "the type of interest a person has in the enforcement of an

ordinary commercial contract often 'is qualitatively different from the interests the Supreme Court has thus far viewed as "property" entitled to procedural due process protection'" (internal quotation omitted)).  However, it is necessary to examine the merits in order to determine whether a particular contract does so in a particular case.  Compare Hulen v. Yates, 322 F.3d 1229, 1241 (10th Cir. 2003) (reporting district court's finding, in § 1983 context, that professor "possessed a property interest in his position as a tenured professor . . . based upon contract"), with Lighton v. Univ. of Utah, 209 F.3d 1213, 1222 (10th Cir. 2000) (affirming district court's grant of summary judgment to defendant on basis that plaintiff's employment contract failed to give rise to constitutional claim).

We recognize, moreover, that a party to an administrative settlement agreement such as the one at issue here would likely be unable to recover money damages under the Tucker Act or Little Tucker Act for the government's breach.  As the Court of Federal Claims has explained, "the Tucker Act's waiver of sovereign immunity does not extend to all agreements made by the government." Awad v. United States, 61 Fed. Cl. 281, 284 (Ct. Cl. 2004).  Where the government enters a contract in its sovereign, rather than proprietary, capacity, as it clearly does in the case of an administrative settlement agreement, a private party may only recover damages under the Tucker or Little Tucker Acts where "(1) the persons who made the contract on behalf of the government . . . had

-19-

authority to bind the government to pay monetary damages; and (2) the contract's language provides for the payment of monetary damages in case of a breach by the government." Id. at 285. Thus, a party with a legitimate constitutionally-protected property interest in such an agreement would be left with no remedy at all for the government's constitutional violation were we to follow the Ninth Circuit's approach.

For the foregoing reasons, we hold that the APA waives sovereign immunity for Robbins' due process claim and that we therefore have subject matter jurisdiction over that claim.

## II.    DUE PROCESS

We review Robbins' due process claim against the BLM under the framework set forth in the APA. Under the APA, a court reviewing agency action shall set aside the action if it is held to be "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(b); see Slingluff v. Occupational Safety & Health Review Comm'n, 425 F.3d 861, 866 (10th Cir. 2005) (noting that the deferential "arbitrary, capricious, [or] abuse of discretion" standard of review "do[es] not apply to questions of law"). Our review of the district court's decision is de novo. Defenders of Wildlife v. U.S. Envtl. Prot. Agency, 415 F.3d 1121, 1126 (10th Cir. 2005).

In order for Robbins to prevail on his claim that the BLM's voiding of the Settlement Agreement violated his procedural due process rights under the Fifth Amendment, he must first establish that he "has been deprived of a protected interest in 'property' or 'liberty.'" Fed. Lands Legal Consortium ex rel. Robart Estate v. United States, 195 F.3d 1190, 1195 (10th Cir. 1999). Robbins asserts that the Settlement Agreement itself qualifies as a protected property interest.

Generally, "'[a] person's interest in a benefit is a "property" interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.'" Curtis Ambulance of Fla., Inc. v. Bd. of County Comm'rs, 811 F.2d 1371, 1375-76 (10th Cir. 1987) (quoting Perry v. Sindermann, 408 U.S. 593, 601 (1972)); see also Town of Castle Rock v. Gonzales, 125 S. Ct. 2796, 2803-04 (2005). We have indicated that "[v]alid contracts may constitute a property interest for purposes of due process." S. Disposal, Inc. v. Tex. Waste Mgmt., 161 F.3d 1259, 1265 (10th Cir. 1998). However, any such contract must provide not simply a unilateral expectation of, but an entitlement to a substantive right or benefit. Town of Castle Rock, 125 S. Ct. at 2803.

We perceive no such entitlement to have been granted in the Settlement Agreement here. Robbins emphasizes the "serious consequences [to his] livelihood" that voiding the Settlement Agreement entails, noting that, "[w]ithout

-21-

the settlement agreement, Mr. Robbins must litigate 16 cases against the BLM and face the consequences including possible loss of his BLM grazing permits." Appellant's Op. Br. at 14. In contrast, Robbins continues, "if the settlement agreement runs to conclusion, Mr. Robbins can have these 16 cases dismissed and in doing so, have his slate wiped clean." Id. However, it is well established that "an entitlement to nothing but procedure" cannot "be the basis for a property interest." Town of Castle Rock, 125 S. Ct. at 2808 (explaining that an individual's ability to seek an arrest warrant "is not the sort of 'entitlement' out of which a property interest is created" where a judge retains discretion over whether to grant the warrant)[10]; see also Olim v. Wakinekona, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); Doyle v. Okla. Bar Ass'n, 998 F.2d 1559, 1570 (10th Cir. 1993) (rejecting a due process claim based on "nothing more than a right to process"). Robbins' "right," pursuant to the Settlement Agreement, not to follow through

_____

[10]Robbins points out that the Court in Town of Castle Rock distinguished the plaintiff's asserted interest in a state's "statutory scheme" governing restraining orders in the domestic violence context from a "contractual entitlement to enforcement" of such a restraining order. See 125 S. Ct. at 2808. However, in making this distinction, the Court did not suggest that a contractual entitlement to nothing but procedure would qualify as a protected property interest for due process purposes; rather, it suggested that a contractual entitlement to enforcement of a restraining order might constitute a substantive, rather than procedural, benefit.

with the pending administrative appeals is thus not the kind of right to which a property interest may attach, regardless of the expense that these proceedings may entail, and regardless of the consequences of a negative outcome.

Robbins appears to argue that a federal agency's "promis[e] . . . to grant individuals or entities certain regulatory treatment" establishes a protected property interest. Appellant's Reply Br. at 10. However, the cases Robbins cites in support of this argument did not address due process claims; rather they addressed breach of contract claims that the plaintiffs had originally brought in the Court of Federal Claims. E.g., Mobil Oil Exploration & Producing Se., Inc. v. United States, 530 U.S. 604, 613 (2000); United States v. Winstar Corp., 518 U.S. 839, 858-60 (1996). As discussed, there is no support for the position that particular regulatory treatment, by itself, constitutes a property interest.

In addition, Robbins cites the provision in the Settlement Agreement stating that it may only be voided if the BLM initiates a formal proceeding against Robbins that alleged a "willful trespass or the violation of any regulation, law, or BLM decision where range or resource degradation is at issue." SA at 8, Appellant's App. at 73. He argues that this provision is analogous to the "for cause" termination provisions that led the Supreme Court to consider employment contracts protected property interests in Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985), and Arnett v. Kennedy, 416 U.S. 134, 166 (1974).

In Loudermill and Arnett, however, a substantive benefit—employment—was at issue. The mere fact that a contract contains provisions governing the terms of its termination is insufficient to establish a property interest.

In his briefs, Robbins fails to point to any provision of the Settlement Agreement that grants Robbins a substantive, rather than procedural, benefit. At oral argument, Robbins for the first time indicated that the BLM's voiding of the Agreement resulted in the immediate termination of his Owl Creek grazing permit, which evidently had been conditionally transferred to him pursuant to the Agreement. The BLM disputed this assertion, and the record contains no information on this issue. Assuming that Robbins intended to argue that the Settlement Agreement gave him an entitlement to the Owl Creek grazing permit—a questionable proposition, as the Agreement required that Robbins submit a grazing plan that the BLM, in its discretion, considered "appropriate and acceptable" before the BLM transferred the permit, SA at 9, Appellant's App. at 74—this circuit has yet to determine whether grazing permits themselves constitute protected property interests for due process purposes. Fed. Lands Legal Consortium, 195 F.3d at 1198 n.7. In the absence of adequate briefing or of any indication in the record that Robbins raised any such argument below, we decline to decide the question here and deem this argument waived. Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc., 413 F.3d 1163, 1167 (10th Cir.

-24-

2005) (arguments not raised in the district court are waived); <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . ."). We further note that, by the terms of the Settlement Agreement, Robbins was free to pursue legal remedies for the cancellation of the Owl Creek permit. However, Robbins' complaint in this case did not challenge the BLM's cancellation of that permit but only the voiding of the Agreement.

Robbins has thus failed to establish that he had a protected property interest in the Settlement Agreement, and his procedural due process claim must therefore fail as well.


**CONCLUSION**

For the foregoing reasons, the judgment of the district court is AFFIRMED. Accordingly, Robbins' motion for a stay is DENIED.