FILED
United States Court of Appeals
Tenth Circuit

January 30, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHARLES CHURCH MCKAY,
an individual,

      Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

      Defendant-Appellee.

No. 06-1538

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 06-CV-874-LTB)**

---

Submitted on the briefs:[*]

Timothy J. Flanagan, Fowler, Schimberg & Flanagan, P.C., Denver, Colorado, for
Plaintiff-Appellant.

Troy A. Eid, United States Attorney, Roxane J. Perruso, Assistant United States
Attorney, Denver, Colorado, for Defendant-Appellee.

---

Before **PORFILIO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

**ANDERSON**, Circuit Judge.

Plaintiff Charles Church McKay brought this action under the Quiet Title Act of 1972 (QTA), Pub. L. No. 92-562, 86 Stat. 1176, to enforce his alleged right to receive special use permits from the United States relating to federal land in which he owns oil and gas interests and next to which he owns land. He invoked the waiver of sovereign immunity in 28 U.S.C. § 2409a (authorizing action "to adjudicate a disputed title to real property in which the United States claims an interest"), and the associated grant of jurisdiction to the federal district courts in 28 U.S.C. § 1346(f), as the basis for bringing suit against the United States in the federal district of Colorado. The district court concluded that the subject matter of the action did not fall within the scope of § 2409a and dismissed for lack of jurisdiction. Plaintiff now appeals. We review the district court's jurisdictional determination de novo, *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1180 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 2134 (2007), and affirm for the reasons explained below.

## BACKGROUND

In the 1950s, the United States acquired land for the Rocky Flats Plant in Jefferson County, Colorado. Plaintiff's family reserved oil and gas interests in some of the land, though with the proviso that those interests were "subordinate

to the rights of the United States to the use of the surface, and no exploration, development, and production of oil and gas shall be permitted from the surface."[1] *United States v. 2,565.50 Acres of Land*, Civil No. 3624, Amendment to Decree on Declaration of Taking No. 2, at 2 (D. Colo. filed May 2, 1955). In 1974, the United States acquired additional land for the plant from plaintiff's family by a warranty deed that similarly reserved coal, oil, and gas interests "without the right to enter upon or over the surface of said land for the purpose of drilling and extracting therefrom said coal, oil and gas." Warranty Deed dated Nov. 15, 1974, attached to Aplt. Reply Brief.[2]

Several years later, plaintiff and others pursued a tort action against the government and its contractors operating the Rocky Flats Plant, seeking relief for damages caused by contamination from operations at the plant. That action, *McKay v. United States*, No. 75-M-1162 (D. Colo.), was settled in 1984. In addition to awarding plaintiff financial compensation and other benefits, the settlement agreement required the government to issue, upon plaintiff's request, three permits granting access to portions of the land "for the general purpose of:

---

[1] The reservation contemplated "production of oil and gas by directional drilling from off-site."

[2] This deed is not in the record, but we may take judicial notice of it to inform our general understanding of the case, particularly as that understanding is consistent with our decision to affirm the district court's disposition. *See* 21B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure*: Evidence 2d, § 5110.1 at 306 & n.39 (2d ed. 2005) (citing cases).

[1] drilling and extracting oil and gas; [2] drilling and extracting well water; and [3] construction and maintenance of a water storage reservoir." Aplt. App. at 22-23; *see also id.* at 48-54, 57-64, and 66-72 (unexecuted permits attached to settlement agreement). The settlement agreement was not incorporated in the order dismissing the case, though the agreement did provide that the district court would retain jurisdiction to enforce its terms for a period of one year following closing, *id.* at 34.

Twenty years passed before plaintiff invoked the agreement's provisions regarding the special use permits. When the government refused to issue them, he filed suit seeking specific performance of the agreement. That suit was dismissed for lack of jurisdiction, the district court holding in pertinent part that it could no longer assert ancillary jurisdiction over the agreement and could not otherwise exercise jurisdiction to order specific performance thereof in the absence of any waiver of sovereign immunity. Aplee. Suppl. App. at 29-32. The district court specifically noted, however, that "[i]f the plaintiffs possess a claim to quiet title, nothing impedes them from filing a new action." *Id.* at 32. We affirmed. *McKay v. United States*, 207 F. App'x 892, 895-96 (10th Cir. 2006).

In the meantime, taking his cue from the district court, plaintiff filed this action under the QTA to compel the government to issue the permits, characterizing the matter as a controversy over "whether the Government's surface ownership . . . is subject to" his right to the permits under the settlement

-4-

agreement, which he attached to his complaint. Aplt. App. at 5, 10. The district court again dismissed, holding that "use permits, like those at issue here, create no vested property rights but rather merely constitute licenses to use federal land" and, as such, are an insufficient basis for a QTA action. *Id.* at 131. The court acknowledged it was "reasonable to infer that property rights attend [plaintiff's] purported mineral estate," but noted he "d[id] not in his complaint ask . . . to enforce any such rights." *Id.*

## ANALYSIS

The QTA is not a broad authorization to sue the government on any claim somehow relating to property; a QTA complaint must assert some cognizable "right, title, or interest . . . in the real property." 28 U.S.C. § 2409a(d). On the other hand, as its legislative history makes clear, the QTA applies even "'where the plaintiff claims an estate less than a fee simple . . . [such as] an easement.'" *Kinscherff v. United States*, 586 F.2d 159, 161 (10th Cir. 1978) (quoting H.R. Rep. No. 92-1559 (1972), reprinted in 1972 U.S.C.C.A.N. 4552, 4554); *see Alaska v. Babbitt*, 38 F.3d 1068, 1074 (9th Cir. 1994); *United States v. Bedford Assocs.*, 657 F.2d 1300, 1316 (2d Cir. 1981). Neither party has been able to cite a single case resolving whether a legally enforceable entitlement to a land use permit of the sort at issue here–involving substantial, long-term, non-discretionary rights functionally similar to those afforded by easements–does

-5-

or does not constitute a property interest cognizable under the QTA.[3]  We need not rest our disposition on such unsettled ground, however, as there is another reason why the QTA does not apply to provide subject matter jurisdiction over this action.

The government argues that plaintiff's effort to compel issuance of the permits under the settlement agreement is in any event excluded from the scope of the QTA by § 2409a(a), which provides that claims against the United States for relief on contracts (or for just compensation pursuant to the Fifth Amendment Takings Clause) that "may be or could have been brought under . . . [the Tucker Act, 28 U.S.C. §] 1491" cannot be brought under the QTA.  Plaintiff counters that

---

[3]     Cases cited by the district court, *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190 (10th Cir. 1999), and *Diamond Bar Cattle Co. v. United States*, 168 F.3d 1209 (10th Cir. 1999), dealing with the legal rights (for purposes other than the QTA) of grazing permit applicants and implied licensees, are inapposite.  They hold that the administrative discretion involved in granting a permit or revoking an implied license negates any property interest. *Robart Estate*, 195 F.3d at 1197-1200; *Diamond Bar Cattle Co.*, 168 F.3d at 1212, 1217; *see also Pai 'Ohana v. United States*, 875 F. Supp. 680, 699 (D. Haw. 1995) (holding permit "subject to revocation at [government's] discretion" did not create property right), *aff'd*, 76 F.3d 280 (9th Cir. 1996).  Here, the settlement agreement and the permits it prescribes (which do not grant the government a unilateral right to revoke) impose legal obligations at odds with the administrative discretion crucial to the analysis in the cited cases.  *See* Aplt. App. at 22-23 (specifying that the government "*shall permit* [plaintiff] access" to Rocky Flats property and that the "terms and conditions of such access *shall be* as specified in the attached permits" (emphasis added)).  Significantly, we have twice left open the question whether grazing permits already held by or legally owed to the plaintiff constitute property interests for due process purposes.  *See Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1086-87 (10th Cir. 2006); *Robart Estate*, 195 F.3d at 1198 n.7.

-6-

he could not bring a Tucker Act suit to compel issuance of the permits under the settlement agreement because the Act does not authorize claims for equitable relief.  Plaintiff is correct that, with exceptions not relevant here, the Tucker Act is limited to claims for damages and impliedly forbids equitable relief.  *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1081 (10th Cir. 2006); *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989).  And, as he points out, this limitation on the reach of the Tucker Act was invoked to defeat the § 2409a(a) exclusion in *United States v. 88.28 Acres of Land*, 608 F.2d 708 (7th Cir. 1979), where the plaintiff could have brought a Tucker Act suit for just compensation under the Takings Clause but instead chose to sue under the QTA for recovery of the property in question.  *Id.* at 716 n.5; *see also United States v. Mottaz*, 476 U.S. 834, 849-51 (1986) (indicating plaintiff has choice to seek compensation under Takings Clause or to enforce ownership interest under QTA).

But this action involves a contractual, not a constitutional, obligation and plaintiff does not cite, nor have we found, any contract case holding that the Tucker Act may be avoided and the § 2409a(a) exclusion defeated by forgoing the damages remedy the Act permits and seeking equitable relief it prohibits.  There is an important reason for not allowing circumvention of the prohibition on equitable relief in actions based on contract:

> "The Government . . . cannot be stopped in its tracks by any plaintiff who presents a disputed . . . contract right . . . .  [I]n the absence of a claim of constitutional limitation, the necessity of permitting the

Government to carry out its functions unhampered by direct judicial intervention outweighs the possible disadvantage to the citizen in being relegated to the recovery of money damages after the event."

*Robbins*, 438 F.3d at 1083 (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704 (1949)).  Thus, in the contract context, a distinct line of authority preserves the sovereign's immunity from being compelled to perform obligations it prefers to breach and compensate financially, holding that what are "in essence" claims for breach of contract cannot circumvent the Tucker Act and its prohibition on equitable relief by being artfully pled as something else.  *See, e.g.*, *Friedman v. United States*, 391 F.3d 1313, 1315 (11th Cir. 2004); *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375-77 (2d Cir. 1999); *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994); *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982).  In *Robbins* we applied this rule to hold that the Tucker Act precludes use of the Administrative Procedures Act to compel specific performance of a government contract, 438 F.3d at 1081-83, while the Tucker Act does not bar claims based on independent constitutional injury (in that case, an alleged due process violation), *id.* at 1083-85.

The dispositive question under this line of authority is whether a claim seeks to enforce contract rights through contract remedies (such as damages for breach and specific performance of obligations) or to enforce legal rights based on independent, non-contractual sources through non-contractual remedies (such as mandamus and injunctive relief).  That we are dealing with the former here is

-8-

clear from the first paragraph of the pleadings, which states that this is an "action *to enforce certain undertakings* by the United States of America *in a Settlement Agreement* . . . [wherein the United States Department of Energy] agreed, among other things, to issue the Plaintiff certain land use permits on federal property, but now refuses to do so."  Aplt. App. at 5 (emphasis added); *see also id.* at 10 (asserting right to issuance of permits "on the terms and conditions set forth in . . . the 1985 Settlement Agreement").

Plaintiff has argued that "the fact that [his] right to access via permits derives from the parties['] Settlement Agreement does not take this action out of the framework of a quiet title action under 28 U.S.C. § 2409a," because the QTA "applies even when the source of the plaintiff's claimed property right is a contract or promise with the United States."  Aplt. App. at 92.  The premise of this argument is clearly at odds with the extensive authority discussed above, which plaintiff has never squarely addressed.  And, upon closer examination, the only relevant case cited to support his position, *Prater v. United States*, 612 F.2d 157 (5th Cir.), *clarified on reh'g*, 618 F.2d 263 (1980),[4] is inapposite here.

In *Prater*, a landowner who had sold property to the United States claimed she had been promised she could reacquire the land in the future at the original

_____

[4]     Plaintiff also cites *Kimberly Assocs. v. United States*, 261 F.3d 864 (9th Cir. 2001), but that case dealt with actions involving federal mortgages and liens under 28 U.S.C. § 2410, which (not surprisingly given its subject matter) has no exclusion like § 2409a(a) for contract claims.

-9-

purchase price.  When she sued for recovery of the property, the court held that she "claimed a right, title or interest in the property" sufficient for purposes of the QTA, because she "asserted equitable title to the realty, under [state] trust law, by virtue of [the] promise of reconveyance."  618 F.2d at 263.  This holding does not avail plaintiff here.  First of all, he did not plead a claim to equitable title under Colorado law, nor did he seek to amend his complaint to do so in his response to the government's motion to dismiss.  He cannot argue the district court erred in dismissing his case for lack of subject matter jurisdiction, by now pointing to a possible legal claim he never asserted.[5]  *See Kaw Nation v. Springer*, 341 F.3d 1186, 1187 (10th Cir. 2003); *see also Burnham v. Humphrey Hospitality Reit Trust, Inc.,* 403 F.3d 709, 713 (10th Cir. 2005) (applying same principle in review of dismissal for failure to state claim); *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 925 n.4 (10th Cir. 1994) (same).  Second, *Prater* never considered the Tucker Act exclusion in § 2409a(a) and the jurisdictional problem it raises for claims that, however pled, are in essence seeking relief for breach of contract.

---

[5]     Under 28 U.S.C. § 1653, appellate courts may permit the amendment of jurisdictionally defective pleadings.  A recent and fairly extensive discussion of the relevant considerations for exercising this discretion, collecting precedent from this and other circuits, can be found in *Daneshvar v. Graphic Technology, Inc.*, 237 F. App'x 309, 314-15 (10th Cir. 2007).  We decline to pursue additional possible bases for jurisdiction here, given that plaintiff and his counsel have long been on notice of the tenuous nature of his reliance for QTA jurisdiction on the permits under the settlement agreement and yet never requested the opportunity to amend the pleadings to assert other theories now suggested in favor of subject matter jurisdiction.

Thus, while *Prater* supports the actionability of equitable title claims under the QTA, it does not offer any guidance on the further issue whether such claims are barred where (as here and, it appears, in *Prater*) they ultimately arise from government obligations entirely contractual in nature.

Alternatively, plaintiff contends on appeal that "[b]ecause [he] has a mineral estate, he also has a common law right of access to the surface for purposes of developing that estate"; that "[t]he permits specifically define the disputed scope of [this pre-existing] right of access"; and hence that the access rights he seeks to enforce in this case "do not derive from the 1985 Settlement Agreement" but, rather, from the mineral reservations of his predecessors in title. Aplt. Reply Br. at 5-6. Again, however, plaintiff did not assert this common law right of access in his complaint or seek to add such a claim in response to the government's motion to dismiss. Indeed, it is difficult to see how he could assert an implied right of access in light of the mineral reservations he relies on, which as noted earlier *expressly relinquished* any right to explore, develop, or produce from the surface of the property. *See generally Lobato v. Taylor*, 71 P.3d 938, 952 (Colo. 2002) (en banc) (explaining that easement will not be implied where contrary to express limitations in deed). In any event, he is stuck with the claim he pursued below, which did not "identify any rights which the Government has infringed, other than those emanating from the Settlement Agreement." Aplt.

App. at 131. As we have seen, that claim is in essence one for breach of contract and, as such, cannot be brought under the QTA.

The judgment of the district court dismissing this action for lack of subject matter jurisdiction is AFFIRMED.