**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 15, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BIJAN DANESHVAR,

      Plaintiff-Appellant,

  v.

GRAPHIC TECHNOLOGY, INC.,

      Defendant-Appellee.

No. 06-3242
(D.C. No. 04-CV-2212-JWL)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

---

Plaintiff Bijan Daneshvar, appearing pro se, appeals from the district court's entry of judgment in favor of defendant Graphic Technology, Inc. (GTI), on his claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Mr. Daneshvar, who is Iranian, worked for GTI since 1988.[1] GTI is in the printing business. Mr. Daneshvar's precise job title is a matter of some contention between the parties, but the district court found that he was a "press assistant." *See* R., Vol. II, Doc. 116 at 8-9. On June 20, 2003, he filed a charge of discrimination with the Kansas Human Rights Commission (KHRC) alleging that GTI had paid him a lower wage than similarly situated non-Iranian employees. On December 22, 2003, GTI suspended Mr. Daneshvar with pay based on allegations that he had sexually harassed a female coworker over the course of several weeks. GTI investigated the allegations and terminated his employment by letter dated January 6, 2004.

Mr. Daneshvar filed a second charge with the KHRC alleging that GTI had retaliated against him for filing the first charge by subjecting him to a heavier workload and suspending him. The notarization on the second charge is dated January 6, 2004, and the charge indicates it was received by the KHRC on January 7. It also appears that Mr. Daneshvar filed an amended charge that the KHRC received on January 21, 2004, which added the termination of his

---

[1]     In the district court, GTI asserted that Mr. Daneshvar worked for GTI since 1998. Although immaterial to our disposition, this apparent discrepancy is perhaps due to the fact that GTI had discharged him in 1997. Mr. Daneshvar successfully challenged that discharge as retaliatory, which in turn lead to his reinstatement in GTI's employ by court order filed in 1998. *See Daneshvar v. Graphic Tech., Inc.*, 40 F. Supp. 2d 1225 (D. Kan. 1998).

employment as another instance of retaliation. However, as discussed in detail below, he never submitted a copy of the amended charge to the district court, but has provided this court with a copy of it.

On February 19, 2004, the Equal Employment Opportunity Commission (EEOC) sent Mr. Daneshvar a right-to-sue letter in which it adopted the KHRC's findings; although the parties have not directed us to any documentation of those findings in the record, they apparently were adverse to Mr. Daneshvar. Mr. Daneshvar then filed his pro se complaint in this action on May 14. On June 25, the KHRC sent Mr. Daneshvar a letter stating that it was dismissing the second charge because the pending lawsuit was based on the same allegations. On August 4, 2004, the EEOC issued a second right-to-sue letter adopting those findings.

In this action, Mr. Daneshvar alleged that GTI committed numerous acts of discrimination or retaliation in violation of Title VII. Chief among those were disparate workload, disparate wage, and wrongful discharge claims. He also listed a number of other claims, ostensibly under Title VII: failure to promote; discriminatory promotional training and promotion; conspiracy; forgery; obstruction of justice; perjury; witness tampering; failure to explain reasons for suspension; failure to pay wages at time of termination; failure to enroll him in GTI's COBRA plan in a timely manner; and failure to enroll him in a guest membership health plan.

GTI filed a motion for summary judgment, which the district court granted in part, denied in part, and retained under advisement in part. The court deemed Mr. Daneshvar's disparate workload claim abandoned and granted summary judgment to GTI on that claim. The court dismissed the remainder of the claims for failure to exhaust administrative remedies with two exceptions—the disparate wage and wrongful discharge claims. The court retained the disparate wage claim because GTI had not moved for summary judgment on it. As to the wrongful discharge claim, the court observed that although Mr. Daneshvar had filed an administrative charge concerning his suspension, a claim he had not asserted in his complaint, it did not appear that he had filed an administrative charge relating to his discharge. Because it could not determine whether Mr. Daneshvar had exhausted his administrative remedies as to his wrongful discharge claim, the court concluded that it could not address GTI's motion for summary judgment on the merits of that claim. The court therefore ordered the parties to submit supplemental briefing on whether it had subject matter jurisdiction over the wrongful discharge claim.

In his supplemental brief, Mr. Daneshvar did not assert that he had filed a charge with the KHRC that identified his discharge as retaliatory. Instead, he argued that his discharge was reasonably related to his suspension such that the January 7 charge, which alleged that his suspension was retaliatory, was sufficient to satisfy the exhaustion requirement as to his discharge. The court rejected that

-4-

argument, relying primarily on *Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003), which it had discussed in its briefing order. The court concluded that Mr. Daneshvar's discharge was a discrete employment action requiring administrative exhaustion and finding that he had failed to exhaust. The court therefore dismissed his wrongful discharge claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

GTI then filed a second motion for summary judgment concerning the remaining disparate wage claim. GTI presented evidence that one non-Iranian press assistant who worked on the night shift received a higher rate of pay than Mr. Daneshvar because of a shift differential. GTI also presented evidence that four other non-Iranian press assistants received higher pay because they had accepted a demotion from higher-paying positions in order to survive a reduction in force, and company policy was to pay such employees at the highest hourly wage within the press assistant grade level. Concluding that Mr. Daneshvar had not presented sufficient evidence to raise a triable fact issue that GTI's proffered nondiscriminatory reasons were pretextual under the analytical framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the district court granted summary judgment in favor of GTI on the disparate wage claim. The court also rejected Mr. Daneshvar's argument that the affidavit of GTI's Vice President of Operations at the relevant time, Charlie Besch, which GTI submitted in support of its second summary judgment motion, was

inadmissible because it lacked foundation, and denied Mr. Daneshvar's motion to strike the supporting affidavit of Jennifer Clary, GTI's human resources manager, and the exhibits attached to it. This appeal followed.

## II. Discussion

Mr. Daneshvar raises two issues on appeal in his opening brief, that the district court erred by (i) dismissing his wrongful discharge claim for failure to exhaust administrative remedies and (ii) considering the affidavits of Mr. Besch and Ms. Clary as proper support for GTI's second motion for summary judgment.[2] We address each issue in turn, bearing in mind that we review Mr. Daneshvar's pro se pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys but do not act as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

### A. Dismissal of Wrongful Discharge Claim

"[E]xhaustion of administrative remedies is a jurisdictional prerequisite to instituting a Title VII action in federal court." *Khader v. Aspin*, 1 F.3d 968, 970 (10th Cir. 1993) (quotation omitted). Thus, a district court must dismiss an unexhausted claim for lack of subject matter jurisdiction. *See Shikles v.*

---

[2]      Mr. Daneshvar raises no error in the district court's order granting summary judgment on his disparate workload claim and dismissing all his other claims, except his disparate wage and wrongful discharge claims, for failure to exhaust. Accordingly, we do not consider the court's rulings on those issues. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (holding that failure to raise an issue in an opening brief waives that issue).

*Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1318 (10th Cir. 2005) (considering effect of failure to exhaust under Age Discrimination in Employment Act). "We review de novo the district court's dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and review findings of jurisdictional facts, if any, for clear error." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003).

Mr. Daneshvar contends that because his suspension and discharge occurred close together in time, they were reasonably related and therefore he was not required to file a separate charge concerning his discharge. We disagree. In *Martinez*, we noted that *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), had effected a fundamental change to the "continuing violation" doctrine concerning unexhausted claims in Title VII actions. *See Martinez*, 347 F.3d at 1210. We had previously held that "when an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or *reasonably related* to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994) (quotation and brackets omitted) (emphasis added).[3] But we concluded in *Martinez* that *Morgan* "abrogate[d] the continuing violation doctrine . . . and replace[d] it with the teaching that each discrete

---

[3]     Mr. Daneshvar relied on *Ingels* in the district court when advancing his "reasonably related" argument, although he has not cited to *Ingels* on appeal.

incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez*, 347 F.3d at 1210 (citing *Morgan*, 536 U.S. 101 at 114).

In *Morgan*, the Court specifically identified termination as a discrete incident that is "easy to identify" and "separate[ly] actionable." 536 U.S. at 114. The Court also identified the plaintiff's exhausted claim of wrongful suspension as a discrete incident that was not barred by the time limitations contained in the statute providing the exhaustion requirement. *See id* at 114-15. Thus, we easily conclude that Mr. Daneshvar's suspension and discharge were separate, discrete incidents, and that each required exhaustion. The fact that Mr. Daneshvar's discharge occurred some two weeks after his suspension does not compel a contrary result; the incidents remain discrete and separately actionable. Exhaustion of each act was required in order to meet the twin purposes of the exhaustion requirement—"to put an employer on notice of a violation prior to the commencement of judicial proceedings" and "to facilitate internal resolution of the issue rather than promoting costly and time-consuming litigation." *Martinez*, 347 F.3d at 1211. The charge Mr. Daneshvar filed with the KHRC on January 7 concerning his suspension did not fulfill either purpose with respect to his discharge. Rather, he was required to present his discharge claim to the KHRC explicitly in order to exhaust his administrative remedies as to that claim.

Our conclusion that Mr. Daneshvar's January 7 charge did not exhaust his administrative remedies as to his discharge claim, however, does not end matters because he argues in the alternative that he filed an amended charge with the KHRC but neglected to present it to the district court. In support of that argument, he has attached a copy of a charge to his opening appellate brief. The charge indicates that it was received by the KHRC on January 21, 2004, and that it was an amendment to the January 7 charge. The amended charge adds retaliatory discharge to the other acts Mr. Daneshvar had set forth in the January 7 charge. Mr. Daneshvar contends that because of his pro se status, he did not realize that the district court was unaware of the amended charge. He also has attached to his brief a copy of a letter dated August 15, 2006, and signed by the executive director of the KHRC, indicating that a letter was sent to GTI on January 21, 2004, notifying GTI of the amended charge.

In response, GTI has filed a motion to strike the documents attached to Mr. Daneshvar's opening brief as well as his argument that relies on them because he did not present the documents or the argument to the district court. Mr. Daneshvar has not filed a response to the motion to strike. Ordinarily, we do not consider evidence that was not before the district court when an appealed ruling was made. *See Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1549 n.1 (10th Cir. 1992). However, 28 U.S.C. § 1653 provides, in its entirety: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or

appellate courts." Thus, § 1653 is an exception to the general rule and permits consideration of materials concerning defective jurisdictional allegations that are presented for the first time on appeal. Accordingly, we deny GTI's motion to strike.[4] But as we explain, this is not an appropriate case in which to permit amendment under § 1653.

Section 1653 permits amendment of "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989). That is, § 1653 does not "empower federal courts to amend a complaint so as to produce jurisdiction where none actually existed before." *Id.* The purpose of § 1653 is "to avoid dismissals on technical grounds." *Brennan v. Univ. of Kan.*, 451 F.2d 1287, 1289 (10th Cir. 1971). "An application under § 1653 is . . . addressed to the discretion of the court, and usually the section is to be construed liberally to permit the action to be maintained if it is at all possible to determine from the record that jurisdiction does in fact exist." *John Birch Soc'y v. NBC*, 377 F.2d 194, 198-99 (2d Cir. 1967).

---

[4]     In its motion to strike, GTI also requests that we strike Mr. Daneshvar's entire opening brief for its wholesale failure to comply with the requirements of Fed. R. App. P. 28 and 32, in particular its failure to provide a table of contents, a table of authorities, a statement of facts with appropriate record citations, a jurisdictional statement, a statement of the applicable standards of review, and a certificate of compliance with the type-volume requirements. We deny the motion as to this request as well.

We have applied § 1653 on a number of occasions, usually to permit amendment of defective allegations of diversity or federal-question jurisdiction. *See, e.g., Penteco Corp. Ltd. P'Ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1523 (10th Cir. 1991) (remanding for fact-finding on diversity of citizenship); *Martinez v. U.S. Olympic Comm.*, 802 F.2d 1275, 1280 (10th Cir. 1986) (treating complaint as amended by allegations made during oral argument in district court concerning federal cause of action); *Lopez v. Denver & Rio Grande W. R.R.*, 277 F.2d 830, 832 (10th Cir. 1960) (granting motion to amend notice of removal to properly allege diversity). Other circuits have permitted amendment on appeal also to remedy defective allegations of standing. *See, e.g., Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006).

This case does not present the typical § 1653 consideration—whether there have been sufficient allegations concerning a proper statutory basis for jurisdiction or whether a party has standing.[5] But as we noted above, exhaustion

---

[5]    Indeed, the only case we have uncovered that considered § 1653 in connection with a right-to-sue letter is *Gooding v. Warner-Lambert Co.*, 744 F.2d 354 (3d Cir. 1984). In *Gooding*, the court cited § 1653 as additional authority for its holding that the district court abused its discretion by not granting the plaintiff leave to amend her complaint in order to allege the existence of a right-to-sue letter issued after the complaint was filed. *See id.* at 358-59. The district court had denied the motion to amend based on its view that issuance of the letter was a jurisdictional prerequisite, a position that the Third Circuit rejected, *see id.* at 358. The important distinction for our purposes is not that the Third Circuit does not share this circuit's view of the jurisdictional significance of the

(continued...)

-11-

of administrative remedies is a jurisdictional prerequisite to a Title VII suit in this circuit, not merely a condition precedent. *See Khader*, 1 F.3d at 970. Allegations of exhaustion, then, concern jurisdictional facts. Treated as a motion to amend his complaint, Mr. Daneshvar's submission of his amended charge to this court is therefore proper under § 1653 because it is an attempt to correct his earlier "statements about jurisdiction that actually exists," not an attempt to remedy "defects in the jurisdictional facts themselves." *Newman-Green, Inc.*, 490 U.S. at 831.

Nonetheless, we conclude that this is not an appropriate case to exercise our discretion under § 1653 and permit amendment on appeal. Permitting appellate amendment of pleadings to satisfy jurisdictional requirements "represents a narrow, case-specific, exception to our general rules of pleading." *Sac & Fox Nation v. Cuomo*, 193 F.3d 1162, 1167 (10th Cir. 1999). Furthermore, § 1653 "presupposes that the parties, not suspecting a jurisdictional difficulty, had no reasonable opportunity to cure it before the appeal." *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1079 (7th Cir. 1986) (*superseded on other grounds as recognized in Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001)). Thus, "where a party has had an opportunity to seek to amend its

---

[5](...continued)
right-to-sue letter, *see Khader*, 1 F.3d at 970, but that the plaintiff in *Gooding* had presented the letter to the district court and sought leave to amend, whereas here Mr. Daneshvar did not.

-12-

pleadings in the district court, it is not appropriate for that party belatedly to seek leave to amend on appeal pursuant to . . . § 1653." *Mills v. Maine*, 118 F.3d 37, 53 (1st Cir. 1997).

In *Sac & Fox Nation*, we declined to construe an appellate brief as an amendment under § 1653 because the jurisdictional argument that was raised in the brief was not presented in the district court as part of the plaintiffs' response to a motion to dismiss for lack of subject matter jurisdiction. *See* 193 F.3d at 1167. We distinguished *Martinez v. United States Olympic Committee*, where we permitted amendment on appeal, on the ground that the appellant there had identified the specific federal cause of action on which jurisdiction was based during oral argument in the district court whereas the appellants in *Sac & Fox Nation* had not presented their appellate theory in the district court. *See id.* Other circuits have denied leave to amend on appeal under § 1653 because the appellants had failed in the district court to correct a jurisdictional defect raised in a motion to dismiss. *See Dubach v. Weitzel*, 135 F.3d 590, 593 (8th Cir. 1998); *Mills*, 118 F.3d at 53-54; *Sarnoff*, 798 F.2d at 1079; *John Birch Soc'y*, 377 F.2d at 197, 199; *Joy v. Hague*, 175 F.2d 395, 396 (1st Cir. 1949). As the First Circuit stated in *Joy*, an appellant who has not corrected a jurisdictional problem when invited by the district court to do so may not avail himself of § 1653 on appeal:

> Though appellants complain that the lower court erred in its conclusion that it had no jurisdiction, on the face of the record, the decision was correct,—indeed, unavoidable and mandatory upon the

-13-

part of the court. Appellants now seek to have us declare this correct judgment erroneous, not because of anything the trial court did, but because of something which they now seek to inject into the record and which was never before that court. There is no error in the record; if error is to appear it will have arisen after the cause has left the trial tribunal because we allow appellants to make a record of facts which they refused to make in the trial court. In other words, appellants, having refused to amend as the District Court invited them to do, thereby knowingly acquiescing in the proposed action of the court and tacitly consenting that it might enter the only order proper on the face of the record, come to this court asking leave to do what they failed to do below and attempt to create an error upon the part of the trial court because of matter never before that court.

*Id.* (citation omitted).

As in the cited cases refusing to permit amendment under § 1653, Mr. Daneshvar had his opportunity to correct the jurisdictional problem in the district court and he failed to do so. Although none of those cases involved a pro se plaintiff, Mr. Daneshvar cannot escape their reach based on his pro se status. He was sophisticated enough to file his other charges in support of his complaint. His rationale for failing to present the amended charge to the district court—that he did not know the district court was unaware of it—defies logic and credulity. The district court ordered supplemental briefs on exhaustion because it did not know "whether a claim for his discharge ha[d] been the subject of a charge of discrimination." R., Doc. 99 at 4. The court's statement, and the order for additional briefing itself, clearly show that the court was unaware of the amended charge. Furthermore, the court directly pointed Mr. Daneshvar to *Martinez v. Potter*, *see id.* at 3-4, which specifically undermined the very

-14-

argument he chose to advance in the district court—that he did not need to file a separate charge because his discharge was reasonably related to his suspension—and the case on which he relied, *Ingels*. He made this argument with the full knowledge that he in fact had filed an amended charge specifically identifying his discharge as retaliatory. By choosing to rely on this argument rather than presenting the amended charge to the district court, even as an alternate basis for finding exhaustion, he manufactured the error of which he now complains. Under the circumstances, we will not allow him to correct the jurisdictional flaw in his case on appeal.

In sum, Mr. Daneshvar's suspension and termination were discrete incidents each of which required explicit exhaustion of administrative remedies. The temporal proximity of those two actions did not render them one discrete incident for purposes of exhaustion. Mr. Daneshvar may not amend his defective allegations of jurisdiction under § 1653 by submitting to this court, for the first time in this litigation, a copy of his amended charge evidencing that he presented his wrongful discharge claim to the KHRC because he was given a reasonable opportunity to present it to the district court. Based on the record before it, the district court did not clearly err in its factual finding that Mr. Daneshvar had not exhausted his administrative remedies as to his wrongful discharge claim, and it properly dismissed the claim for lack of subject matter jurisdiction.

-15-

**B. Support for GTI's Second Summary Judgment Motion**

In its memorandum and order granting summary judgment to GTI on the disparate wage claim, the district court assumed that Mr. Daneshvar had established a prima facie case of discrimination under *McDonnell Douglas*. The court relied on the affidavits of Mr. Besch, GTI's Vice President of Operations at the relevant time, and Ms. Clary, GTI's human resources manager, in finding that GTI had met its burden to proffer a legitimate, nondiscriminatory reason why it paid five non-Iranian press assistants more than Mr. Daneshvar at the time he filed his disparate-wage administrative charge in June 2003. In finding that Mr. Daneshvar had not shown pretext, the court rejected his argument that he was not a press assistant and therefore not similarly situated to the comparator employees. The court also rejected his procedural challenges to the Besch and Clary affidavits.

In his opening brief on appeal, Mr. Daneshvar renews his challenges to the district court's reliance on the affidavits. We review the district court's evidentiary rulings at the summary judgment stage for abuse of discretion. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

We need not address the issues Mr. Daneshvar takes with the Besch affidavit because that affidavit was not integral to the district court's disposition. Ms. Clary's affidavit, while not a model of clarity, set forth legitimate,

nondiscriminatory reasons that GTI paid the five non-Iranian press assistants more than Mr. Daneshvar. Specifically, when employees accept a transfer or demotion to a lower-graded position within the company to avoid a layoff, Ms. Clary stated that it was GTI's policy to attempt to pay them at the highest level of pay within the lower-graded position. This policy accounted for the higher wages paid to four of the other press assistants. She also stated that the fifth press assistant was paid a higher wage due to a night-shift differential.

Mr. Daneshvar did not contest the accuracy of the information set forth in the Clary affidavit, challenge the evidentiary admissibility of the documents attached to it, or make any showing that GTI's nondiscriminatory reasons were pretextual. He only moved to strike the affidavit on the ground that it was impermissibly attached to GTI's reply brief, an argument he repeats on appeal, and one that we reject. "Rule 56 neither authorizes nor forbids a reply brief." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998). But "if the court relies on new materials or argument in a reply brief, it may not forbid the nonmovant from responding to these new materials." *Id.* at 1165. This rule applies to new materials submitted in support of a legal argument that has already been made. *See Doeble v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003).

The district court relied on the Clary affidavit and the attached exhibits. The evidence contained in those materials concerning the five non-Iranian press

-17-

assistants was in further support of arguments made in GTI's opening brief. Because the district court did not prohibit Mr. Daneshvar from responding to the Clary affidavit, but in fact considered his motion to strike the affidavit, the district court's reliance on the Clary affidavit was proper, and the court did not abuse its discretion in denying the motion to strike it.[6]

### III. Conclusion

The judgment of the district court is AFFIRMED. Mr. Daneshvar's opening brief, treated as a motion to amend pursuant to 28 U.S.C. § 1653, is denied. GTI's motion to strike is denied as moot.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[6] In his reply brief, Mr. Daneshvar asserts for the first time on appeal that because he was a production assistant, not a press assistant, he was compared to a category of employees with whom he was not similarly situated. In contrast to the Clary affidavit submitted with GTI's summary judgment reply brief, which presented further evidence in support of an argument made in GTI's opening brief, Mr. Daneshvar's appellate reply brief raises a new issue—an alternate ground for reversing the district court's decision. "This court does not ordinarily review issues raised for the first time in a reply brief." *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). Accordingly, Mr. Daneshvar has waived this issue.