**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RURAL WATER SEWER AND SOLID
WASTE MANAGEMENT, District No.
1, Logan County, Oklahoma, an agency
and legally constituted authority of the
State of Oklahoma,

      Plaintiff-Counter-Defendant-
      Appellee,

v.

CITY OF GUTHRIE, an Oklahoma
Municipality; THE GUTHRIE PUBLIC
WORKS AUTHORITY, a public trust,

      Defendants-Counterclaimants-      Nos. 08-6003, 08-6066
      Third-Party Plaintiffs-Appellants,

v.

DEPARTMENT OF AGRICULTURE,

      Third-Party-Defendant-
      Appellee,

and

COMMUNITY PROGRAM LOAN
TRUST 1987A, a Massachusetts Business
Trust,

      Third-Party Defendant.

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 05-cv-00786-R)**

James C. Milton (Courtney Bru, with him on the briefs) Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, Oklahoma, for Defendants-Appellants City of Guthrie and The Guthrie Public Works Authority.

Michael D. Davis (Steven M. Harris, with him on the brief) Doyle Harris Davis & Haughey, Tulsa, Oklahoma, for Plaintiff-Appellee Rural Water, Sewer and Solid Waste Management District No. 1.

Steven K. Mullins (John C. Richter, United States Attorney & Kay Sewell, Assistant United States Attorney, on the brief) United States Attorney's Office, Oklahoma City, Oklahoma for Third-Party Defendant-Appellee Department of Agriculture.

Before **GORSUCH, EBEL** and **MATHESON**[*], Circuit Judges.

**EBEL**, Circuit Judge.

This case involves a dispute between two water service providers over which one of them is entitled to serve certain customers located in and around Guthrie, Oklahoma. Plaintiff-Appellee Rural Water, Sewer and Solid Waste Management District No. 1 of Logan County ("Logan-1") claims that its right to serve these customers is grounded in

---

[*]Judge Michael W. McConnell was the third member of the panel when this case was orally argued and when the panel certified several questions to the Oklahoma Supreme Court. Judge McConnell resigned his commission on August 31, 2009, and did not participate in this opinion. Judge Scott M. Matheson, Jr. replaces Judge McConnell on the panel. Judge Matheson has read the briefs, reviewed the previous oral argument held in this case, and is fully advised on the premises of these appeals. No member of the panel concludes that further oral argument is necessary.

state law, but is protected from competition from encroaching water districts by a federal statute, 7 U.S.C. § 1926(b). Section 1926(b) protects rural water providers like Logan-1, which are indebted on loans obtained from the United States Department of Agriculture ("USDA"). Logan-1 contends that Defendants-Appellants City of Guthrie and its Guthrie Public Works Authority (collectively "Guthrie") violated § 1926(b) by extending water service to customers located in Logan-1's designated service area.

In these appeals, Guthrie challenges several district court orders. Having jurisdiction to review some of these orders under 28 U.S.C. § 1292(b), and jurisdiction to review others under Fed. R. Civ. P. 54(b) and 28 U.S.C. § 1291, we AFFIRM in part, REVERSE in part, and REMAND this case to the district court.

## I. BACKGROUND

"In 1961 Congress amended the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1921-2009n, to allow nonprofit water associations to borrow federal funds for 'the conservation, development, use, and control of water . . . primarily serving . . . rural residents.'" Moongate Water Co. v. Dona Ana Mut. Domestic Water Consumers Ass'n, 420 F.3d 1082, 1084 (10th Cir. 2005) (quoting 7 U.S.C. § 1926(a)(1)). Originally the Farmers Home Administration ("FmHA") administered these loans. See Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester, 358 F.3d 694, 701 & n.1 (10th Cir. 2004). Since 1994, however, the USDA has operated this loan program, see id. at 701 n.1, through its Rural Utilities Service. See Rural Water Dist. No. 1, Ellsworth Cnty. v. City of Wilson, 243 F.3d 1263, 1269 n.3 (10th Cir. 2001) (citing 7 C.F.R. § 1780.3(a)).

3

Beginning in January 1976, Logan-1 obtained a series of five forty-year loans from the USDA—two in 1976, and one each in 1978, 1982 and 2003. Logan-1 is a non-profit association created in 1972 by the Logan County Board of Commissioners to provide water service to parts of Logan County, but not within the Guthrie city limits as those limits existed at that time.

In order to provide greater security for the loans the USDA makes, as well as to promote rural water development, see Pittsburg Cnty., 358 F.3d at 715, Congress, as part of the Consolidated Farm and Rural Development Act, through 7 U.S.C. § 1926(b) prohibited "other water utilities from competing with the borrowing entity within the borrowing entity's service area," Dona Ana Mut. Domestic Water Consumers Ass'n v. City of Las Cruces, 516 F.3d 900, 902-03 (10th Cir. 2008). In 2005, Logan-1 sued Guthrie, claiming Guthrie had encroached on Logan-1's service area, in violation of § 1926(b), by providing water to customers located in Logan-1's service area.

The district court granted Logan-1 partial summary judgment on its § 1926(b) claims, making several legal conclusions that Guthrie challenges now on appeal. The district court certified these interlocutory decisions for immediate appeal under 28 U.S.C. § 1292(b), and this court accepted the appeal, see Fed. R. App. P. 5.

In addition to Logan-1's § 1926(b) claims against Guthrie, Guthrie filed counterclaims against Logan-1 and a third-party complaint against the USDA. The district court dismissed Guthrie's counterclaim and third-party claims for procedural reasons. Guthrie also challenges those determinations now on appeal. Although the

4

district court's dismissal of Guthrie's counterclaim and third-party complaint did not dispose of all of the claims at issue in this case, the district court certified its dismissal of those particular claims as final and appealable under Fed. R. Civ. P. 54(b).

## II. LOGAN-1'S § 1926(b) CLAIMS AGAINST GUTHRIE

Section 1926(b) states:

> The service provided or made available through any [indebted rural water] association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b). Although this case does not specifically involve the "inclusion of [Logan-1's service] area . . . within the boundaries of any municipal corporation or other public body," "the granting of any private franchise for similar service[s] in [Logan-1's service] area," or any "event . . . requiring [Logan-1] to secure any franchise, license, or permit as a condition to continuing to serve [its] area," id., this court has applied § 1926(b) broadly to protect an indebted rural water district against competition from municipalities encroaching upon the rural water district by other, "similar means." Glenpool Util. Servs. Auth. v. Creek Cnty. Rural Water Dist. No. 2, 861 F.2d 1211, 1214 (10th Cir. 1988) (quotation omitted); see also Pittsburg Cnty., 358 F.3d at 714-15; Sequoyah Cnty. Rural Water Dist. No. 7 v. Town of Muldrow, 191 F.3d 1192, 1197 (10th Cir. 1999). Thus, we have previously applied § 1926(b) in cases like this one, where an

5

indebted rural water district sought protection against encroachment by a neighboring municipality allegedly providing water service to the rural water district's customers or potential customers. See Rural Water Dist. No. 1, 243 F.3d at 1267-69; Sequoyah Cnty., 191 F.3d at 1194, 1197-1201. See generally Adams Cnty. Reg'l Water Dist. v. Vill. of Manchester, 226 F.3d 513, 518 (6th Cir. 2000) ("Most of the cases arising under § 1926(b) have involved a municipality's attempt to encroach on a rural water association's area of service. Courts have uniformly understood the section as forbidding such encroachment, concluding that § 1926(b) should be given a liberal interpretation that protects rural associations indebted to the [USDA] from municipal encroachment." (quotation omitted; citing cases)).

To be entitled to § 1926(b)'s protection from competition, Logan-1 must establish 1) its continuing indebtedness on loans obtained from the USDA and 2) that it has provided or at least made water service available. See Pittsburg Cnty., 358 F.3d at 713; Sequoyah Cnty., 191 F.3d at 1197. Any "doubts about whether a water association is entitled to protection from competition under § 1926(b) should be resolved in favor of the [USDA]-indebted party seeking protection for its territory." Pittsburg Cnty., 358 F.3d at 715 (quotation, alteration omitted); see also Sequoyah Cnty., 191 F.3d at 1197. We address each of these requirements in turn. The district court, in addressing this two-pronged inquiry, granted Logan-1 partial summary judgment, making several legal determinations which Guthrie challenges now on appeal. We review those legal determinations de novo. See Pittsburg Cnty., 358 F.3d at 713.

**A. Logan-1 has a continuing indebtedness under loans it obtained from the USDA**

On appeal, Guthrie does not dispute that Logan-1 has been continually indebted, since 1976, on loans obtained from the USDA.[1]  Instead, Guthrie argues that Logan-1's indebtedness is invalid.  More specifically, Guthrie claims that §1926(b)'s protection against competition is contrary to the Oklahoma Constitution, which provides that "[t]he Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State."  Okla. Const. art. 5, § 51.  While the Oklahoma legislature has authorized Logan-1, under Okla. Stat. tit. 82,

---

[1]In 1987, the USDA sold Logan-1's first four loans to a private entity, Third-Party Defendant Community Program Loan Trust 1987A ("Trust"), pursuant to Congress' direction, under the Omnibus Budget Reconciliation Act of 1986 ("OBRA"), Pub. L. No. 99-509, § 1001, 100 Stat. 1874 (1986), to sell some of these loans to private lenders. See Moongate Water Co. v. Butterfield Park Mut. Domestic Water Ass'n, 291 F.3d 1262, 1265 (10th Cir. 2002); Sequoyah Cnty., 191 F.3d at 1198.  Congress later amended OBRA to clarify that § 1926(b)'s protection of the borrowing rural water district from competition continued to apply to these loans: "1926(b)[] shall be applicable to all notes or other obligations sold or intended to be sold under" § 1001 of OBRA.  Pub. L. No. 100-233, § 803, 101 Stat. 1568 (1988); see also Moongate Water, 291 F.3d at 1265; Sequoyah Cnty., 191 F.3d at 1198.  Although the USDA sold Logan-1's four loans in August 1987, after Congress enacted OBRA but before its amendment, occurring in January 1988, none of the parties here contend that § 1926(b)'s protections do not continue to apply to the four Logan-1 loans that the USDA sold to the Trust.  See Moongate Water Co. v. Butterfield Park Mut. Domestic Water Ass'n, 125 F. Supp. 2d 1304, 1308-10 (D.N.M. 2000) (holding indebted water districts were still protected under § 1926(b) even when its loans were sold under OBRA, but prior to the amendment to OBRA clarifying that the § 1926(b) protection attached to these loans continued), aff'd, Moongate Water, 291 F.3d at 1264, 1265-67 .  Thus, as to its first four loans now owned by the Trust, Logan-1 "remains indebted on what were originally [USDA] loans." Moongate Water, 291 F.3d at 1267.

§ 1324.10(A)(4), to enter into loan agreements with the USDA,[2] see Sequoyah Cnty., 191 F.3d at 1194, Guthrie contends that § 1324.10(A)(4) violates Okla. Const. art. 5, § 51 to the extent it authorizes Logan-1 to enter into loans that must, as a matter of federal law, protect the rural water district from competition under 7 U.S.C. § 1926(b).

The Oklahoma Supreme Court accepted our certification of this question, see Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1 v. City of Guthrie, 344 F. App'x 462 (10th Cir. 2009) (unpublished), and concluded that a rural water district could agree to § 1926(b)'s protection without violating the Oklahoma Constitution. See Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1 v. City of Guthrie, 253 P.3d 38, 41 (Okla.

_____

[2]In pertinent part, Okla. Stat. tit. 82, § 1324.10 provides:

A.  Every district incorporated hereunder . . . shall have power to:

    . . . .

> 4. Borrow money and otherwise contract indebtedness for the purposes set forth in this act, and, without limitation of the generality of the foregoing, to borrow money and accept grants from the United States of America, or from any corporation or agency created or designated by the United States of America, and, in connection with such loan or grant, to enter into such agreements as the United States of America or such corporation or agency may require; and to issue its notes or obligations therefor, and to secure the payment thereof by mortgage, pledge or deed of trust on all or any property, assets, franchises, rights, privileges, licenses, rights-of-way, easements, revenues, or income of the said district.

(Footnote omitted.)  See Pittsburg Cnty., (No. 107,468) 358 F.3d at 701 (noting that the Oklahoma legislature enacted Okla. Stat. tit. 82, § 1324.10(A)(4) in response to Congress' enactment of 7 U.S.C. § 1926(b)).

8

2010). In reaching that conclusion, the Oklahoma Supreme Court determined the following: The Oklahoma legislature enacted statutes that permit the creation of rural water districts with designated service areas, but the legislature has not provided these districts with an exclusive franchise to provide water service in those areas. See id. at 45-46 & 46 n.10. The state legislature also authorized these rural water districts to borrow money and enter into contracts. See id. at 46. And in borrowing money, a district may obtain financing from the USDA, even if such an agreement requires § 1926's protection from competition. See id. at 46-47. That protection, however, is granted, not by the state legislature, but instead by Congress. See id. at 44-48, 52 (relying on Glenpool, 861 F.2d at 1216). Therefore, "article 5, section 51 is neither implicated nor violated as no action by the Oklahoma Legislature has been taken that grants an exclusive right to a water district." Id. at 48. Moreover, §1926(b)'s protection "is a qualified not an exclusive right, limited in time and in scope" by "preclud[ing] competitive water services only while a district remains indebted to the USDA [and] to the extent that a competitor's services would curtail or limit the indebted district's ability to provide water services and repay its loans." Id. at 49. Further, noting that a rural water district can only invoke § 1926(b)'s protection if it has made water service available, the Oklahoma Supreme Court determined that, "[a]t most, section 1926(b) ordains a dual water authority function within a municipal area for a period of time." Id. at 49-50.

In light of the Oklahoma Supreme Court's resolution of our certified question, we affirm the district court's determination that Logan-1's § 1926(b) protection does not

9

violate the Oklahoma Constitution. Logan-1 has thus established that it has been continually and validly indebted, since 1976, on loans obtained from the USDA.

**B.** **Whether Logan-1 has provided or made water service available**

In order to establish that it has adequately made water service available, Logan-1 must first show that it has the legal right to provide water service. See Sequoyah Cnty., 191 F.3d at 1201 n.8; see also Moongate Water, 420 F.3d at 1084-85. Here, no one disputes that Logan-1 has a right under Oklahoma law to provide water service within its assigned territory.

Logan-1 must also establish that it has in fact "provided or made [water service] available," 7 U.S.C. § 1926(b). See Sequoyah Cnty., 191 F.3d at 1201-03. This inquiry "focus[es] primarily on whether [Logan-1] . . . has proximate and adequate 'pipes in the ground' with which it has served or can serve the disputed customers within a reasonable time." Id. at 1203; see also Butterfield Park, 291 F.3d at 1267-68; Rural Water Dist. No. 1, 243 F.3d at 1270.

> [A] water association meets the "pipes-in-the-ground" test by demonstrating that it has adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made. This is essentially an inquiry into whether a water association has the capacity to provide water service to a given customer.

Sequoyah Cnty., 191 F.3d at 1203 (quotation, citation omitted); see also Pittsburg Cnty., 358 F.3d at 713; Butterfield Park, 291 F.3d at 1268; Rural Water Dist. No. 1, 243 F.3d at 1270. Further, Logan-1 "must have made service available prior to the time an allegedly encroaching association began providing service in order to be eligible for § 1926(b)

10

protection." Sequoyah Cnty., 191 F.3d at 1202 (quotation, alterations omitted).

The district court determined that, in this case, there were disputed issues of fact remaining as to whether Logan-1 had made services available to the customers at issue before Guthrie began providing those customers with water. The parties do not challenge that determination on appeal. In granting Logan-1 partial summary judgment, however, the district court made several legal determinations as to how it intends to resolve that factual question. Guthrie challenges two of those legal conclusions here.

**1. The "made service available" determination should be decided on a customer-by-customer basis in this case**

Guthrie first challenges the district court's determination that it will decide whether Logan-1 made services available on a customer-by-customer basis, rather than on an area-wide basis. We need not set forth a per se rule here but, instead, conclude that the district court was correct in applying a customer-by-customer basis in this case because Logan-1 specifically alleged that Guthrie violated § 1926(b) by providing water to certain customers located in Logan-1's service area. That is a more narrow claim than if Logan-1 had instead alleged that § 1926(b)'s protection from competition applied to protect entire areas within its designated service area. We, therefore, need not decide here whether Logan-1 could make such an area-wide claim.

Moreover, the manner that Logan-1 pled its § 1926(b) claim, on a customer-by-customer basis, is consistent with how prior Tenth Circuit cases have addressed the question of whether an indebted rural water district has "made service available" for

11

purposes of § 1926(b). For example, in Sequoyah County, the plaintiff rural water district alleged that a competing municipal water provider violated § 1926(b) by providing water service to specific customers in the rural water district's assigned territory. See 191 F.3d at 1194-95, 1197. This court, in that case, thus addressed the rural water district's § 1926(b) claim on a customer-by-customer basis. See id. at 1203-06; see also Butterfield Park, 291 F.3d at 1263-64 (addressing a dispute under § 1926(b) about which competing water provider had the right to serve a particular customer); cf. Rural Water Dist. No. 1, 243 F.3d at 1267, 1271-72 (addressing whether a rural water district made service available to three specific properties within its service area). Similarly, this court, in Pittsburg County, remanded a § 1926(b) claim to the district court with instructions to consider whether the rural water district had made service available to each of the specific customers at issue in that case. See 358 F.3d at 713-14; see also id. at 716 (addressing the defendant water district's sales to customers in an area de-annexed from the purportedly protected rural water district); Sequoyah Cnty., 191 F.3d at 1201 n.6 (noting on remand that the district court would have to consider, among other things, whether the rural water district "demonstrate[d] that it 'made service available' to the customers that Defendants allegedly began serving before the repurchase date" of the rural water provider's loans obtained from the USDA). The Eighth Circuit has also applied the "pipes in the ground" test customer by customer. See Pub. Water Supply Dist. No. 3 of Laclede Cnty. v. City of Lebanon, 605 F.3d 511, 521-23 (8th Cir. 2010). Therefore, given the way that Logan-1 alleged and argued its § 1926(b) claims in this case, the district court did not err

12

in concluding that it would decide whether Logan-1 had "made services available" on a customer-by-customer basis.

**2. Whether Logan-1 can provide fire protection to the disputed customers is irrelevant to the question of whether Logan-1 made service available to them for purposes of § 1926(b)**

Guthrie next argues that the district court, in addressing whether Logan-1 made service available to the disputed customers, must consider that Logan-1 is required by state and federal law to provide its customers with fire protection, but cannot do so. The district court, however, held that Logan-1 was not legally obligated to provide fire protection. We agree.

Guthrie asserts that 7 C.F.R. § 1780.57 mandates that Logan-1 provide fire protection. But that regulation provides only that "[w]ater facilities" financed by the USDA "should have sufficient capacity to provide reasonable fire protection to the extent practicable." 7 C.F.R. § 1780.57(d) (emphasis added). See Rural Water Dist. No. 4 v. City of Eudora, 604 F. Supp. 2d 1298, 1329 (D. Kan. 2009) (rejecting similar argument), clarified on reconsideration, 2009 WL 1360182 (D. Kan. 2009).

7 C.F.R. § 1780.57 also provides more generally that "[f]acilities financed by the [USDA] will be designed and constructed in accordance with sound engineering practices, and must meet the requirements of Federal, State and local agencies." Relying on this regulation, Guthrie further contends that Oklahoma law requires Logan-1 to provide fire protection. But in support of that argument, Guthrie cites to two Oklahoma administrative regulations, one addressing "[w]ater main design for all systems providing

13

fire protection," Okla. Admin. Code 252:626-19-3 (emphasis added), and the other

addressing "[w]ater main design for systems providing domestic water only," which

"applies only to water systems without full fire protection capabilities," id. 252:626-19-4

(emphasis added). Because these regulations clearly anticipate that some water systems

will provide fire protection, while others will not, the district court correctly rejected

Guthrie's argument that Oklahoma law, as set forth in these regulations, requires Logan-1

to provide fire protection.

Despite correctly concluding that neither federal nor state law requires Logan-1 to

provide fire protection to its customers, the district court nevertheless held that, in light of

7 C.F.R. § 1780.57(d)'s language—"[w]ater facilities" financed by the USDA "should

have sufficient capacity to provide reasonable fire protection to the extent

practicable"—the court could consider, as one factor in deciding whether Logan-1 has

made service available, if it was practicable for Logan-1 to provide "reasonable fire

protection." See Sequoyah Cnty., 191 F.3d at 1203-05 (considering evidence regarding

rural water district's physical capacity to provide disputed customers with both potable

water and with fire protection). We disagree with the district court's conclusion.

Logan-1's ability to provide fire protection is simply not relevant to the specific question

of whether Logan-1 has adequate pipes in the ground to "make service available" for

purposes of the § 1926(b) protection from competition.[3] See Rural Water Dist. No. 4, 604

---

[3]We address only whether Logan-1 has adequate pipes in the ground to make water service available for purposes of §1926(b). This court has recognized that, even though a water district has pipes in the ground to provide water service upon request, "the cost of

14

F. Supp. 2d at 1313, 1317, 1328-29 (holding "fire protection is irrelevant to whether a water district has made service available"); Rural Water Dist. No. 1 v. City of Ellsworth, 995 F. Supp. 1164, 1167 n.2 (D. Kan. 1997) (indicating that rural water district's ability to provide fire protection "has no effect on its rights under § 1926(b)"); N. Shelby Water Co. v. Shelbyville Mun. Water & Sewer Comm'n, 803 F. Supp. 15, 23 (E.D. Ky. 1992) (holding, prior to enactment of § 1780.57, that "[t]he adequacy of the water service North Shelby is presently able to provide, including fire protection, is irrelevant to a determination whether North Shelby is entitled to the protections of § 1926(b)"); Rural Water Dist. No. 3 v. Owasso Utils. Auth., 530 F. Supp. 818, 823 (N.D. Okla. 1979) (noting § 1926(b) "was not enacted for the purposes of fire protection—it was enacted to provide means of securing a safe and adequate supply of running household water" (quotation omitted)); cf. Rural Water Dist. No. 1, 243 F.3d at 1272 (noting that City's plan to run water pipes into site of planned development only for fire protection did not encroach on rural water district's service rights as to that site); Sequoyah Cnty., 191 F.3d at 1204 n.10 (noting "that the United States District Court for the Northern District of [Iowa] recently held that, because § 1926(b) was not enacted to supply fire protection, a water association's capacity to provide fire protection is irrelevant to its entitlement to protection from competition under § 1926(b)" (citing Rural Water Sys. No. 1 v. City of

those services may be so excessive that it has not made those services 'available' under §1926(b)." Rural Water Dist. No. 1, 243 F.3d at 1271. But none of the parties on appeal raise an issue regarding the cost of Logan-1's provision of water service and so we have no occasion to address that question here.

15

Sioux Ctr., 29 F. Supp. 2d 975, 992-94 (N.D. Iowa 1998), aff'd in part, rev'd in part on other grounds, 202 F.3d 1035 (8th Cir. 2000))).[4]

## C.    Conclusion as to Logan-1's claims asserted against Guthrie

To summarize,[5] to invoke § 1926(b)'s protection from competition, Logan-1 must establish 1) its continued indebtedness under loans obtained from the USDA, and 2) that it has made service available. Based upon the Oklahoma Supreme Court's decision in response to our certified question, we hold that Logan-1 has established its continued indebtedness. As to the question of whether Logan-1 has made service available, we conclude that determination must, in this case, be made on a customer-by-customer basis. We further conclude that whether Logan-1 can provide fire protection to the customers in dispute is irrelevant to the question of whether Logan-1 has made water service available to them for purposes of 7 U.S.C. § 1926(b).[6]

---

[4]Like this court, the Sixth and the Eighth Circuits apply the "pipes in the ground" test for determining §1926(b)'s protection against competition. See Le-Ax Water Dist. v. City of Athens, 346 F.3d 701, 706 (6th Cir. 2003) (discussing both Sixth and Eighth Circuit cases).

[5]We decline to address the issue raised by Logan-1, as an appellee, challenging the district court's determination that the applicable two-year statute of limitations will limit Logan-1's recovery of damages for any § 1926(b) violation, because Logan-1 did not file a cross-appeal raising this question. See Lombardi v. Small Bus. Admin., 889 F.2d 959, 962 (10th Cir. 1989).

[6]Nothing in our opinion addresses whether the federal government can, or should, consider the fire protection offered or made available by a rural water district in determining whether to make a loan to a rural district under § 1926. Nor do we address a situation where fire protection was explicitly included in a contract between the USDA and a rural water district. The loan agreements at issue here between Logan-1 and the USDA did not require Logan-1 to offer fire protection.

16

### III.  GUTHRIE'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Guthrie also challenges the district court's decision to dismiss, for procedural reasons, Guthrie's third-party complaint against the USDA and Guthrie's counterclaims asserted against Logan-1.

**A.      Dismissal of Guthrie's third-party complaint against the USDA**

In its third-party complaint against the USDA, Guthrie sought declaratory and injunctive relief under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706. These claims are based generally on two theories: 1) Logan-1 did not have authority, under Oklahoma law, to agree to the § 1926(b) protection from competition because the protection was contrary to Okla. Const. art. 5, § 51.  2) But if Logan-1 did have state-law authority to agree to the § 1926(b) protection, then the USDA is now obligated to invoke the graduation clause in the 2003 loan agreement which, according to Guthrie, requires Logan-1 to repay that loan immediately.[7]

---

[7]Each of the loans Logan-1 obtained from the USDA contained graduation clauses which were not identical but provided something to the effect that

> [i]f at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept such loan in sufficient amount to repay the Government.

(Aplt. App. at 745.)  Guthrie's graduation-clause theory of recovery is limited to the 2003 loan agreement because the USDA transferred its first four loans with Logan-1 to the Trust.  Before doing so, the USDA eliminated any right the Trust might have to invoke the graduation clauses in those agreements and the USDA waived its own right to invoke these clauses:

17

The district court dismissed these claims on sovereign immunity grounds and for lack of standing. This court will review these decisions de novo. See Normandy Apartments, Ltd. v. U.S. Dep't of Housing & Urban Dev., 554 F.3d 1290, 1296 (10th Cir. 2009) (sovereign immunity); Day v. Bond, 500 F.3d 1127, 1132 (10th Cir. 2007) (standing).

**1. Guthrie's claims based upon the Oklahoma constitution**

Ordinarily, this court must resolve jurisdictional issues, such as sovereign immunity and standing, "before addressing the merits of the claim, even if the [jurisdictional] question[s] [a]re difficult and we could easily decide the merits." Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs., 569 F.3d 1244, 1259 (10th Cir. 2009); see also

---

> The Trust shall not have the right to compel any Borrower to prepay a Loan solely by reason of such Borrower's ability to refinance its unpaid indebtedness under the Loan at reasonable rates and terms, and the Government hereby waives, relinquishes and agrees not to exercise any such right it may have under any of the instruments, contracts or agreements herein described or under any Federal law or regulations.

(Id. at 1121-22 (quotation, alteration omitted).) In its amended third-party complaint, Guthrie originally named both the Trust and the USDA as defendants. Guthrie also challenged the USDA's authority to waive the graduation clauses in these loan agreements. But the district court held that the relevant six-year statute of limitations barred any challenge Guthrie asserted to the USDA's transfer of the first four loans to the Trust, which occurred in 1987. See 28 U.S.C. § 2401(a) (providing generally that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"). And the district court later granted Guthrie's motion to dismiss the Trust from this litigation. On appeal, the parties do not challenge either of these decisions. Therefore, as to Guthrie's theory of recovery based upon the graduation clauses in the loan agreements, the four loans that the USDA sold to the Trust in 1987 are no longer at issue and we address here only Guthrie's third-party claims based upon the graduation clause contained in the USDA's 2003 loan agreement with Logan-1.

18

id. at 1259-60; Carolina Cas. Ins. Co. v. Pinnacol Assurance, 425 F.3d 921, 923-24, 927-28 (10th Cir. 2005). But the Supreme Court, in Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 98-100 (1998),

> recognized an exception to the general rule–that jurisdiction must be established before turning to the merits . . . . Occasionally a court may rule that a party loses on the merits without first establishing jurisdiction because the merits have already been decided in the court's resolution of a claim over which it did have jurisdiction. In that circumstance, resolution of the merits is "'foreordained," so the court is not producing an advisory opinion. Rather, it is merely parroting a prior decision. Such parroting is not an improper aggrandizement of power by the court. The court is not overreaching to decide an issue; after all, the issue has already been decided.

Starkey, 569 F.3d at 1260 (citation omitted).

That exception applies here to Guthrie's claims asserted against the USDA based upon the asserted conflict between § 1926(b) and the Oklahoma Constitution. The Oklahoma Supreme Court, in resolving our certified question raised by Logan-1's § 1926(b) claims against Guthrie, over which we clearly have jurisdiction, rejected the merits of that argument. The Oklahoma Supreme Court's decision also resolves the merits of Guthrie's third-party claims based on the same theory. We therefore need not address whether the United States has waived its sovereign immunity as to these claims, nor do we need to decide whether Guthrie has standing to assert them. Instead, we affirm the district court's dismissal of Guthrie's claims against the USDA which are based upon the alleged § 1926(b)/Oklahoma Constitution conflict, but we do so based on these

19

claims' merit, or more precisely on their lack of merit.[8]  We, therefore, remand these

claims to the district court with instructions to dismiss them with prejudice.[9]

## 2. Guthrie's claims based upon the graduation clause in the 2003 loan agreement

We must still address our jurisdiction to consider Guthrie's third-party claims

against the USDA seeking to enforce the graduation clause in the 2003 loan agreement.

---

[8]These claims include Guthrie's claims seeking the following declarations:  that Okla. Stat. tit. 82, § 1324.10 "is <u>unconstitutional</u> under the Oklahoma Constitution to the extent that it provides the Plaintiff with the authority to enter into loan agreements with the USDA that carry with them exclusive rights to serve a particular territory, its service area—an area broader than its existing customers"; "that complying with state law is a contractual condition precedent upon which § 1926(b) funding is based[,] and that under Oklahoma law," Logan-1 "is without the authority to enter into an agreement that grants exclusive rights to an entity[,] and that by applying the appropriate contractual analysis required by the Spending Clause cases," Logan-1 "has failed to meet a condition precedent for § 1926(b) funding"; "that the loan agreements upon which [Logan-1] bases its claims are void for reasons that they are based upon misrepresentations by [Logan-1] to the USDA regarding [Logan-1's] state-law authority to borrow funds under a contract that carries with it exclusive rights"; "that the loan agreements . . . are void for the reason[] that they exceed the authority of [Logan-1] under Oklahoma law," and that Logan-1 "violated Oklahoma law in entering into its agreements with the USDA."  (Aplt. App. at 1123-24.) These claims further include Guthrie's claim seeking injunctive relief in the form of a "judgment preventing the USDA from entering into any further agreement with [Logan-1] that carries with it exclusive rights under 7 U.S.C. § 1926(b)."  (<u>Id.</u> at 1125.)

[9]The district court dismissed these claims on sovereign immunity and standing grounds, without specifying whether that dismissal was with or without prejudice.  But a dismissal on sovereign immunity grounds or for lack of standing must be without prejudice.  See <u>Governor of Kan. v. Kempthorne</u>, 516 F.3d 833, 846 (10th Cir. 2008) (sovereign immunity); <u>Brereton v. Bountiful City Corp.</u>, 434 F.3d 1213, 1216 (10th Cir. 2006) (standing); <u>see</u> <u>also</u> <u>Garman v. Campbell Cnty. Sch. Dist. No. 1</u>, 630 F.3d 977, 988 (10th Cir. 2010) (noting that, "[g]enerally a dismissal for lack of subject matter jurisdiction is without prejudice"), <u>petition for cert. filed</u>, 79 U.S.L.W. 3629 (U.S. Apr. 15, 2011) (No. 10-1283).

We conclude that the United States has not waived its sovereign immunity as to these claims.

Generally, the United States, through the APA, has waived its sovereign immunity to "[a]n action in a court of the United States seeking relief other than money damages." 5 U.S.C. § 702[10]; see also Robbins v. U.S. Bureau of Land Mgmt., 438 F.3d 1074, 1080 (10th Cir. 2006) (noting that 5 U.S.C. § 702 "waives sovereign immunity in most suits for nonmonetary relief against the United States, its agencies, and its officers" (quotation omitted)). Nevertheless, the APA limits this waiver of sovereign immunity in the last sentence of 5 U.S.C. § 702, which provides that the APA does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." See Kempthorne, 516 F.3d at 841 n.4; Robbins, 438 F.3d at 1080. "Thus, we must read the APA in conjunction with other jurisdictional statutes

---

[10]5 U.S.C. §702 provides, in pertinent part, as follows:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States . . . . Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

21

waiving sovereign immunity in order to determine whether those statutes forbid the relief sought in the case at hand." Robbins, 438 F.3d at 1080 (quotations omitted).

In Robbins, this court considered the interaction of the APA with the federal Tucker and Little Tucker Acts.

> The Tucker Act, 28 U.S.C. § 1491, provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." Id. § 1491(a)(1). The Little Tucker Act, 28 U.S.C. § 1346(a)(2), grants federal district courts concurrent jurisdiction over contract claims against the government where plaintiffs seek no more than $10,000 in damages. The Supreme Court has long held that neither the Tucker Act nor the Little Tucker Act authorize relief other than money damages for such contract claims.

Robbins, 438 F.3d at 1080-81 (footnote omitted). Reading the APA's waiver of sovereign immunity with the Tucker Acts' waiver, Robbins held "that the Tucker and the Little Tucker Act, 'impliedly forbid' federal courts from ordering declaratory or injunctive relief, at least in the form of specific performance, for contract claims against the government, and that the APA thus does not waive sovereign immunity for such claims." Id. at 1082 (footnote omitted); see also McKay v. United States, 516 F.3d 848, 851 (10th Cir. 2008) (noting that, "in the contract context, a distinct line of authority preserves the sovereign's immunity from being compelled to perform obligations it prefers to breach and compensate financially, holding that what are 'in essence' claims for breach of contract cannot circumvent the Tucker Act and its prohibition on equitable relief by being artfully pled as something else").

In this case, Guthrie's claims seeking the enforcement of the graduation clause in

22

Logan-1's 2003 loan agreement with the USDA are claims seeking equitable relief in the nature of specific performance.[11] The United States has not waived its sovereign immunity as to such claims. Therefore, sovereign immunity bars these claims and we affirm the district court's dismissal of these claims without prejudice.

### 3. Conclusion as to Guthrie's third-party claims asserted against the USDA

In summary, we affirm the dismissal of Guthrie's claims against the USDA alleging that Logan-1 had no authority under Oklahoma law to agree to 7 U.S.C. § 1926(b)'s protection from competition. But we do so based on the merits of those claims and so we remand them for the district court to dismiss those claims with prejudice. We further conclude that, because the United States has not waived its

---

[11]These include Guthrie's claims asserted against the USDA seeking a declaration that Logan-1 "has the financial capability to retire or refinance the loans that originated with its loan agreements with the USDA," and that Logan-1 "should retire or refinance the loans that originated with its loan agreements with the USDA," as well as Guthrie's claim asserted against the USDA seeking injunctive relief in the form of judgments requiring the USDA "to enforce, against [Logan-1], the requirement that [Logan-1] perform its duties and obligations under the graduation requirements of its [2003] loan[] and either retire or refinance its federal indebtedness," and "to take the necessary steps required to enforce the graduation provisions of the [2003] loan contract." (Aplt. App. at 1124-25.) On appeal, Guthrie does not further assert its claim against the USDA seeking a judgment "requiring [Logan-1] to perform its duties and obligations under the graduation requirements of its [2003] loan[] and either retire or refinance its federal indebtedness." (Id. at 1125 (emphasis added).) And so we do not address that claim. Before the district court, it appears that Guthrie sought to amend its third-party complaint to add claims against the USDA seeking the enforcement of the graduation clause based upon USDA regulations addressing the USDA's periodic review of loans for possible graduation. But Guthrie does not appeal the district court's decision denying its motion to amend. We, therefore, also do not address whether the United States waived its sovereign immunity to claims resting, not on the 2003 loan agreement's graduation clause, but instead on USDA regulations addressing loan graduation generally.

23

sovereign immunity, the district court properly dismissed without prejudice Guthrie's claims against the USDA seeking declaratory and injunctive relief based upon the graduation clause in the 2003 loan agreement.

**B.      Dismissal of Guthrie's counterclaims against Logan-1**

Guthrie asserted counterclaims against Logan-1 based on the same two theories underlying its third-party complaint against the USDA—1) Logan-1's loan agreements with the USDA were void because Logan-1 lacked authority under state law to agree to the § 1926(b) protection from competition that was part of those loan agreements; and 2) the graduation clause in the 2003 loan agreement should be enforced, requiring Logan-1 to repay its indebtedness to the USDA.  After dismissing Guthrie's third-party claims against the USDA based on the Government's sovereign immunity and Guthrie's lack of standing (an issue we need not address), the district court dismissed Guthrie's counterclaims against Logan-1, under Fed. R. Civ. P. 19, for failure to join an indispensable party—the USDA.

### 1.  Counterclaim based upon the alleged conflict between 7 U.S.C. § 1926(b) and the Oklahoma Constitution

Based upon the Oklahoma Supreme Court's decision rejecting the merits of Guthrie's state constitutional argument, we affirm the district court's dismissal of Guthrie's first counterclaim, not because Guthrie cannot join the USDA, but because, as previously explained, this argument lacks legal merit.  In doing so, however, we again remand that claim so that the district court can clarify that this dismissal on the merits is

24

with prejudice.

**2. Counterclaim based upon graduation clause in the 2003 loan agreement**

In its opening brief on appeal, Guthrie focused exclusively on the district court's decision to dismiss Guthrie's counterclaim premised on the Oklahoma Constitution. Guthrie does not address the dismissal of its counterclaim based on the graduation clause until its reply brief and then only fleetingly. In light of that, we conclude Guthrie has waived any argument challenging the dismissal of its counterclaim based upon the graduation clause in the 2003 loan agreement.[12] See M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 768 n.7 (10th Cir. 2009). We, thus, affirm the district court's dismissal of this counterclaim without prejudice.

## IV. CONCLUSION

A.      **The district court's entry of partial summary judgment in favor of Logan-1 on its § 1926(b) claims against Guthrie**

To summarize, based upon the Oklahoma Supreme Court's decision in response to our certified questions, we AFFIRM the district court's determination that Logan-1 established its continued indebtedness under loans obtained from the USDA. Based upon the circumstances presented here, we also AFFIRM the district court's conclusion that the "made service available" determination should be made on a customer-by-customer basis. Further, we AFFIRM the district court's decision that Logan-1 is not legally required to provide fire protection. But we REVERSE the district court's determination that whether

---

[12]Even if we were to address the merits of this claim, however, we would affirm the district court's decision.

25

it is practicable for Logan-1 to provide fire protection is one factor to be considered in deciding whether Logan-1 has made service available. We REMAND Logan-1's § 1926(b) claims asserted against Guthrie for further proceedings consistent with this opinion.

**B.      The district court's dismissal of Guthrie's claims against the USDA and Logan-1**

We also AFFIRM the district court's dismissal of Guthrie's third-party claims for equitable relief asserted against the USDA, based upon the alleged conflict between § 1926(b)'s protection from competition and the Oklahoma Constitution. But we do so, not for lack of jurisdiction, but instead for lack of merit. We, therefore, REMAND these claims so the district court can clarify that the dismissal of these claims is with prejudice. We AFFIRM the district court's dismissal without prejudice of Guthrie's third-party claims for equitable relief against the USDA, based upon the graduation clause contained in the USDA's 2003 loan agreement.

We similarly AFFIRM the dismissal of Guthrie's counterclaim asserted against Logan-1, based upon the alleged § 1926(b)/Oklahoma Constitution conflict, but we do so again based on that claim's lack of merit. We, therefore, REMAND this counterclaim so the district court can also dismiss it with prejudice.